## LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* MAXWELL.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 181. Submitted March 8, 1915.—Decided April 5, 1915.

Under the Act to Regulate Commerce the duly filed tariff of the carrier must be charged by it and paid by the shipper or passenger without deviation therefrom.

Shippers and travelers are charged by the duly filed tariff and must abide thereby, unless it is found to be unreasonable by the Interstate Commerce Commission.

Neither misquotation of rates nor ignorance is an excuse for charging or paying less or more than the filed rate.

Although a passenger might have gone and returned by direct route to and from the point of destination, if he expressed the desire to go and come by a different route via specified points, he must pay the filed tariff rates for the route taken, notwithstanding a misquotation

made by the carrier's agent and accepted by him in good faith. Such a mistake is not a mere misrouting by error of the carrier which would relieve the passenger.

In a case here under § 237, Jud. Code, if the filed tariffs are not included in the record, this court takes the findings of the state court.

If the tariffs are not included in the record of a case to recover excess over an undercharge, and this court reverses a judgment against the carrier on the findings of the state court, and it appears on further proceedings that there was no undercharge, the carrier cannot recover in the court below.

THE facts, which involve the construction of the Act to Regulate Commerce and the right of the carrier to recover from a passenger the amount of an undercharge on sale of railroad tickets, are stated in the opinion.

*Mr. John B. Keeble* and *Mr. Ed. T. Seay* for plaintiff in error, submitted.

*Mr. John A. Pitts* and *Mr. K. T. McConnico* for defendant in error, submitted.

MR. JUSTICE HUGHES delivered the opinion of the court.

This action was brought, before a Justice of the Peace in Tennessee, by the Louisville & Nashville Railroad Company to recover $58.30 as the amount of an alleged undercharge on the sale of railroad tickets. Judgment for the defendant was affirmed by the Court of Civil Appeals and by the Supreme Court of the State. The case comes here on error.

The facts, which were said to be undisputed, were found by the state court to be as follows:

Defendant in error, G. A. Maxwell, after repeated interviews, and correspondence, with the representatives of the Louisville & Nashville Railroad Company in regard to rates on round trip tickets to Salt Lake City, pur-

chased on or about the first day of June, 1910, "two passenger tickets from Nashville, Tennessee, to Salt Lake City, by way of Chicago, Ill., Denver, Colo., and routed to return by Denver, Colo., Amarillo and Fort Worth, Texas, and Memphis, Tennessee, and paid for each ticket the sum of $49.50.

"There were at the time, published rates under the provisions of the Interstate Commerce Act by which fares over the route actually traveled, going and coming, aggregated $78.65 each, or $29.15 each more than was charged and collected therefor, making a difference of $58.30 between the amount paid by Mr. Maxwell for the tickets in question, and the amount that should have been charged and collected.

"Mr. Maxwell was informed when he first made inquiry about the tickets in January, that there were no special rate tickets at that time, but likely would be by May or June first. He then, and on several occasions thereafter, made known his desire to go to Salt Lake City by one route, and return by another, and was told that he could not be furnished reduced rates except by going and coming over the same route, but after repeated inquiries, and the correspondence referred to, he was informed that he could make the trip on reduced rates one way, and return another; and when he went finally to purchase the two tickets, he stated to the agent that he wanted to go by way of Chicago and Denver and return by way of Stamford, Texas, and was given the tickets routed as hereinbefore noted, at the rates mentioned. At that time, he in fact could have gone to Salt Lake City at the rate which he paid, but over other routes, going and returning through Chicago and Denver, or through St. Louis and Denver, or through Memphis and Denver, or going through St. Louis and Denver and returning through Denver, Amarillo and Memphis.

"Mr. Maxwell was in no way at fault in the matter.

He did no more than tell the agent the points to which he
wished to go and make it known that he did not wish to
go and return by the same route. The agent fixed the
routing in the tickets and named the fare, and Maxwell
paid without further question."

Under the Interstate Commerce Act, the rate of the
carrier duly filed is the only lawful charge. Deviation
from it is not permitted upon any pretext. Shippers and
travelers are charged with notice of it, and they as well
as the carrier must abide by it, unless it is found by the
Commission to be unreasonable. Ignorance or mis-
quotation of rates is not an excuse for paying or charging
either less or more than the rate filed. This rule is un-
deniably strict and it obviously may work hardship in
some cases, but it embodies the policy which has been
adopted by Congress in the regulation of interstate com-
merce in order to prevent unjust discrimination. The Act
(§ 6) provides:

"Nor shall any carrier charge or demand or collect or
receive a greater or less or different compensation for such
transportation of passengers or property, or for any serv-
ice in connection therewith, between the points named in
such tariffs than the rates, fares, and charges which are
specified in the tariff filed and in effect at the time; nor
shall any carrier refund or remit in any manner or by any
device any portion of the rates, fares, and charges so
specified, nor extend to any shipper or person any privi-
leges or facilities in the transportation of passengers or
property, except such as are specified in such tariffs."

The scope and effect of the provisions of the statute as
to filing tariffs (both in their present form and as they stood
prior to the amendments of 1906) have been set forth in
numerous decisions. *Gulf, Col. & Santa Fe Rwy.* v. *Hefley,*
158 U. S. 98; *Tex. & Pac. Rwy.* v. *Mugg,* 202 U. S. 242;
*Tex. & Pac. Rwy.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426,
445; *Armour Packing Co.* v. *United States,* 209 U. S.

56, 81; *N. Y. C. & H. R. R.* v. *United States*, 212 U. S. 500, 504; *Chicago & Alton R. R.* v. *Kirby*, 225 U. S. 155, 166; *Illinois Central R. R.* v. *Henderson Co.*, 226 U. S. 441; *Kansas Southern Rwy.* v. *Carl*, 227 U. S. 639, 653; *Pennsylvania R. R.* v. *International Coal Co.*, 230 U. S. 184, 197; *Boston & Maine R. R.* v. *Hooker*, 233 U. S. 97, 110–113; *George N. Pierce Co.* v. *Wells, Fargo & Co.*, 236 U. S. 278, 284. In the *Mugg Case, supra,* it appeared that a rate, less than the lawful scheduled rate, had been quoted to the shipper by the agent of the railroad. The shipper had relied upon the quoted rate in making his shipments and sales. But it was held that he was bound to pay the established rate and was not entitled to the delivery of the goods without such payment. This was upon the ground that it was beyond the power of the carrier to depart from the filed rates and that the erroneous quotation of the rate by its agent did not justify it in making a different charge from that which was lawfully applicable to the shipment. As was said in *Kansas Southern Rwy. Co.* v. *Carl, supra:* "Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay. The shipper's knowledge of the lawful rate is conclusively presumed, and the carrier may not be required to surrender the goods carried upon the payment of the rate paid, if that was less than the lawful rate, until the full legal rate has been paid."—It was "the purpose of the Act to have but one rate, open to all alike and from which there could be no departure." *Boston & Maine R. R.* v. *Hooker, supra,* p. 112. The rule is applicable to the transportation of passengers and their baggage. *Id.*

The Supreme Court of the State fully recognized the established principle, but stated that the majority of the court were of the opinion that it was not controlling here,

for the reason that Mr. Maxwell could have gone to the point of destination, Salt Lake City, on one route, and have returned on another route, at the price actually paid for the tickets, and that, therefore, 'the mere misrouting of the ticket by the Railroad Company' was not a discrimination. In thus holding, the assumption was that there was an error on the part of the Railroad Company in the routing, by which he was misled, and that, as it is said, Mr. Maxwell 'could have gone to Salt Lake City at the price paid over other routes going and returning through Chicago and Denver or going through St. Louis and Denver and returning through Denver, Amarillo and Memphis, either one of which would have met his requirements.'

We are unable to reach the conclusion that this ground of decision was available under the findings of fact. A misstatement, or misquotation, of the rate over a given route is one thing; misrouting is a different matter. We do not think that it can be said that there is a 'misrouting,' in any proper sense, when the route given by the company is that requested by the shipper or passenger. See *Spreckels* v. *Monongahela R. R.*, 18 I. C. C. Rep. 190, 191. According to the findings of fact, it appears that, after his interviews and correspondence, Mr. Maxwell finally 'stated to the agent that he wanted to go by way of Chicago and Denver, and return by way of Stamford, Texas.' His request covered four points,—Chicago, Denver, Salt Lake City, and Stamford. It appears by the findings that he could have gone, at the rate actually paid, through St. Louis and Denver, returning through Denver, Amarillo and Memphis, or that he could have made the trip, at that rate, 'going and returning through Chicago and Denver, or through St. Louis and Denver, or through Memphis and Denver.' But according to the findings, he was not entitled at the rate which he paid to make the trip through Chicago and Denver, returning

as he desired through Stamford, Texas.   We are not concerned with the reasons for the differences in rates on the various routes, but merely with the fact that they existed under the applicable tariffs as filed.   Under these tariffs, the findings of fact show that the amount paid was less than the amount due over the route selected.

The counsel for the defendant in error insist that as the tariffs are not included in the record, the judgment cannot be reversed.   But, as we have said, we take the findings of the state court.

It is further insisted that, on reference to the tariffs, it will appear that the Railroad Company is mistaken in its assertion that there was an undercharge, and that the rate actually paid was, in truth, the lawful rate.   The tariffs have not been submitted to us and it is sufficient to say that if in the further proceedings in this case it shall appear that the defendant in error is right in this contention, it will necessarily follow that the Railroad Company will be unable to recover.   But we cannot so hold upon the case as it is now presented.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice McReynolds dissents.