Richards, J.
This action was commenced by The New York Central Railroad Company as successor of The Lake Shore l& Michigan Southern Railway Company, before a justice of the peace, to recover an amount claimed to be due it from the defendant, Frederick O. Peak, by reason of an undercharge of freight made by it in a shipment of 15 horses from Boswell, Indiana, to Sylvania, Ohio. At the conclusion of the trial before the justice of the peace a motion was made by the plaintiff for a directed *400 verdict in its favor, which was overruled, and an exception taken. The jury returned a verdict for the defendant and judgment was rendered thereon. A bill of exceptions was taken setting forth all of the evidence, and error was prosecuted to the court of common pleas, which court affirmed the judgment rendered in favor of the defendant.
On the trial of the case the plaintiff introduced in evidence the- printed tariff of freight charges from Boswell, Indiana, to Sylvania, Ohio, showing the rate to be 32 cents per hundredweight when the shipment was made via Sandusky over the L. E. & W. Railway, and thence to Sylvania over The L. S. & M. S. Railway. It also appeared that shipment could be made, and in this case in fact was made, via Fostoria over The L. E. & W. Railway, thence to Toledo over The T. & O. C. Railway, and thence to Sylvania over The L. S. & M. S. Railway. Over this latter route the joint rate was 32 cents per hundredweight to Toledo, and then there was an additional rate from Toledo to Sylvania of 7\ cents per hundredweight. The defendant désired to ship via Fostoria and Toledo and was informed by the company’s agent that the rate was 32 cents, the same as if the shipment had been made via Sandusky. But the agent was plainly in error in giving this rate, as it omitted the regular tariff rate, as shown by the schedule on file with the interstate commerce commission, of 7¿ cents per hundredweight from Toledo to Sylvania. This action is to recover this latter charge of 7-| cents per hundredweight.
Some contention was made that the railroad official identifying the schedule on file with the in *401 terstate commerce commission was not able to say that the rate sheets introduced in evidence embraced all of the rates in force at that time for shipments over the lines of railroad mentioned, but it is entirely clear that they did embrace all the tariff rates on those roads between Boswell, Indiana, and Sylvania, Ohio.
There can be no doubt that the official rate duly fixed and filed with the interstate commerce-commission is binding alike on carrier and shipper. The direct question was decided by the supreme court of the United States in Louisville & Nashville Railroad Co. v. Maxwell, 237 U. S., 94. In that case Mr. Maxwell desired two railroad tickets by certain routes which he named, and by oversight the railroad agent quoted him a lower rate than that fixed in the published rates on file with the interstate commerce commission. Mr. Maxwell, as was said in the opinion, was in no way at fault in the matter. He did no more than tell the agent the points to which he wished to go, and the agent fixed the routing in the tickets and named the fare, which Maxwell paid without question. In the case at bar Mr. Peak was without fault in the matter. The error was solely that of the agent. But, under the decision in the case just cited, this error does not relieve the defendant from the duty to pay the regular fixed tariff. We quote the following from the opinion of Mr. Justice Hughes, on page 97:
“Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with *402 notice of it, and they as well as the carrier must abide by it, unless it is found by the commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.”
It is perfectly manifest that the object of the Interstate Commerce Act was to have but one rate, from which there could be no departure. The Ohio statute is construed in the same way. Erie Rd. Co. v. Steinberg, 94 Ohio St., 189, proposition 4 of syllabus.
This court had a similar question. in a case arising in Erie county, based on an intrastate shipment, under the Ohio statute, Section 510, General Code, and we reached a like conclusion. We refer to the unreported case of The Lake Erie & Western Rd. Co. v. The Kelley Island Lime & Transport Co., decided June 12, 1914.
It is contended, however, that there is no authority for the common pleas court or for this court to review the judgment of the justice of the peace on the weight of the evidence, and that the motion for a new trial filed before the justice of the peace was not' in accordance with the statute. That motion had as one ground that the judgment was against the weight of the evidence. The statutes of Ohio at one time did not authorize a review of a judgment of a justice of the peace on the weight of the evidence, but such is not the law *403 at the present time. The language of Section 10361, General Code, authorizes such review, and the authority there given is not restricted by the language of Section 10352, General Code. See Koch v. The State, 73 Ohio St., 131, 138. It is true that the case just cited was a criminal action, but the supreme court there held that the rule contained in Section 10361 is applicable alike to criminal and civil actions.
This court carefully reviewed the sections authorizing the review on error of judgments entered before justices of the peace, and reached a similar conclusion, in the unreported case of Brand v. Murray et al., a Lucas county case, decided on June 7, 1916.
Counsel are not in accord as to whether the request that the justice of the peace should direct the jury to return a verdict in favor of the plaintiff was made before or after the argument. We do not regard the time of the making of that application or request to direct a verdict as important. It was clearly made before the jury had retired, and should have been granted.
For the error in refusing to direct a verdict for the plaintiff the judgments rendered will be reversed and final judgment entered here for the plaintiff in error.

Judgments reversed, and judgment for plaintiff in error.

Chittenden and Kinkade, JJ., concur.