## THE COLUMBUS TENT & AWNING CO. *v.* THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RY. CO.

*Carriers — Railroads — Free special baggage car — For twenty-five passengers at regular fares — Error of agent in dividing party of thirty-five — Excess fare not recoverable, when.*

A railway company, whose ticket agent sold at full regular tariff two tickets for two parties of sixteen and nineteen men, respectively, and agreed to furnish a special baggage car free, can not recover further compensation in excess of the service actually rendered for the transportation of one of such parties because of a transportation rule to furnish a special baggage car free with a party of not less than twenty-five adults, holding tickets at regular tariff rates; especially, since the issuing of the tickets and the division of the party were determined by the ticket agent and no misquotation of fare rates was made.

(Decided March 27, 1919.)

ERROR: Court of Appeals for Franklin county.

*Mr. Thomas M. Sherman,* for plaintiff in error.
*Messrs. Wilson & Rector,* for defendant in error.

FERNEDING, J. In the municipal court in the city of Columbus an action was brought by The C., C., C. & St. L. Railway Company against The Columbus Tent & Awning Company to recover the sum of $15.75, representing the tariff rate for three passenger tickets from Columbus, Ohio, to Erie, Pennsylvania. The municipal court rendered judgment for the defendant.

Upon petition in error to the court of common pleas this judgment was reversed and a final judgment was rendered in favor of the railway company for the amount of the claim. The case is now brought to this court upon petition in error.

The facts upon which the claim is made are substantially agreed upon, and are as follows:

On or about September 11, 1916, The Columbus Tent & Awning Company desired to transport thirty-five men from Columbus, Ohio, to Erie, Pennsylvania, and to obtain for their use from the railway company, free of charge, a special baggage car for the transportation of baggage. The tent and awning company wanted to ship the men in two parties, of sixteen and nineteen, respectively, provided it could be done, and said special baggage car secured free of charge, without a violation of the rules of the railway company. At the time of purchasing tickets the manager of the tent and awning company stated that while he would prefer to send sixteen on one ticket, and nineteen on another ticket, this preference would be subordinated to the rules of the company, and that he would so divide the number as to comply in all particulars with the requirements of the railway company, insuring a special baggage car free of charge, and he left to the agent of the railway company the issuance of the tickets for the party of thirty-five in compliance with the regulations. The agent of the railway company before issuing the tickets in the ratio set forth consulted with the company's general officers at Cincinnati, as to the company's requirements in the premises, with the result that he assured the manager of the tent and awning company that the parties represented by the tickets would be entitled to transportation and the use of a special baggage car without cost or additional charge and could be divided into parties of sixteen and nineteen. The negotiations resulted in the

purchase by the plaintiff in error of two tickets, one calling for sixteen passengers and the other for nineteen passengers, with a special baggage car to transport the baggage. The sixteen men were transported on September 11, the remaining nineteen on September 17. The fare paid for each passenger was $5.25, which was the regular tariff rate. The record is not absolutely clear whether the special baggage car was furnished at the time of the transportation of the party of sixteen or the party of nineteen.

The recognized rule of the railway company, as embodied in the published tariff schedule, is to the effect that a special baggage car will be furnished free in connection with the transportation of a party of not less than twenty-five adults holding tickets at the regular tariff rate, provided the aggregate amount of such fares is not less than $25. The tariff schedule also provides that where it is found not to be convenient to transport the baggage car on the same train as the passengers the arrangements may be made for not to exceed three employes to accompany the baggage car, and a separate ticket may be issued therefor at the same per capita fare as charged the other members of the party.

The railway company now contends that it was incumbent upon the tent and awning company to purchase at least twenty-two adult tickets in one party in order to obtain the concession of a free baggage car, and that the tent and awning company having obtained the use of a free baggage car on a transportation of only nineteen adults in one party the railway company was and is

entitled to charge for an additional three-passenger
ticket, which would represent a total of twenty-
five, less the three permitted by the rules of the
company to travel on another train.   In support
of this contention counsel for the railway company
rely largely on two decisions of the supreme court
of the United States, to-wit: *Texas & Pacific Ry.
Co.* v. *Mugg,* 202 U. S., 242, and *Louisville &
Nashville Rd. 'Co.* v. *Maxwell,* 237 U. S., 94.   In
the *Mugg case* there was an undercharge for serv-
ices actually rendered and we do not think that
applies to this case.   Preliminary to a consideration
of the *Maxwell case,* let it be said that the supreme
court of the United States has, according to its
own dictum in said opinion, announced the estab-
lishment of a very vigorous rule in order to uphold
the policy of the Interstate 'Commerce Act, so as
to prevent discrimination between railway com-
panies in the transportation of passengers and
freight.

Not unfrequently has it been held that a shipper
is bound to pay the published tariff rate for a given
shipment notwithstanding such shipper may have
been ignorant of such rate and relied upon the
agent of the railway company who inadvertently
and unintentionally gave such shipper a lower rate.

In the *Maxwell case, supra,* the agent of the
railway company gave Maxwell the same rate over
several lines.   Maxwell chose an indirect route.
The agent informed Maxwell that the fare upon
either route was the same.   Later it was discov-
ered that the published tariff rate for the trans-
portation previously secured by Maxwell exceeded
in amount that charged by the agent of the rail-

way company to Maxwell at the initial point, and Maxwell was required to pay the difference. It is important to observe at this point that Maxwell actually secured a service at less cost, for which the higher rate was fixed by the published tariff schedule. In other words, Maxwell secured certain transportation at a cost less than authorized by the Interstate Commerce Act.

Mr. Justice Hughes, in speaking for the court, said, at page 97:

"Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination."

It seems clear that there is a marked distinction between the *Maxwell case* and the case at bar. In the former, Maxwell was merely required to pay for the service actually obtained and at the regular tariff rate. In the case at bar the railway company is asking the tent and awning company to pay for three passenger tickets in excess of the service actually furnished. The tent and awning company paid not only for twenty-two adult fares, but, as a matter of fact, for thirty-five adult passengers actually transported.

We are unable to comprehend, even under a most rigid construction of the Interstate Commerce Act as defined in the opinion of Mr. Justice Hughes, how the railway company could legally maintain an action for the recovery of the price of three

additional passenger tickets when no such passenger service had been furnished.

If the tent and awning company had secured a baggage service to which it was not entitled, the railway company's only remedy would be to recover for such excess baggage service.

We are of the opinion that the tent and awning company did not obtain any service which it was not entitled to under the record in this case. There is no element of doubt that if the tickets had been properly issued and the parties to be transported properly divided as to numbers, no claim would have been made of an undercharge. The issuing of the tickets and the division of the parties as to numbers was left to the agent of the railway company. The controversy as to the charges in the case at bar arises not out of any misquotation of rate, but solely because of error of the agent in routing the party as to number. This feature finds some support by Mr. Justice Hughes in the following comment; at page 99 of the *Maxwell case:*

"A misstatement, or misquotation, of the rate over a given route is one thing; misrouting is a different matter. We do not think that it can be said that there is a 'misrouting,' in any proper sense, when the route given by the company is that requested by the shipper or passenger."

The turning point in the *Maxwell case* was that the passenger requested and obtained particular service, for which he was required to pay the full tariff rate.

In the case here under discussion we think the shipper paid the full tariff rate for the service he

actually requested; whatever error was made was due to the mistake of the agent of the railway company in issuing the tickets, and not by the tent and awning company in accepting the transportation, for which it paid the full tariff rate.

The rule announced in the *Maxwell case* was stated to be a harsh one. Of course the infringement of a settled and fixed policy, while beneficial and wise in a general application, may, in the case of some individual operate unfairly, yet under all the facts and circumstances of the present case we think it is not one requiring the general policy of the act to be invoked.

It therefore follows that the judgment of the court of common pleas should be reversed, and that of the municipal court affirmed.

*Judgment reversed.*

ALLREAD and KUNKLE, JJ., concur.