SHEFFIELD KING MILLING COMPANY v. CHICAGO GREAT
WESTERN RAILROAD COMPANY.[1]

October 1, 1926.

No. 25,274.

**Reference to documentary evidence in settled case prevails over certificate of settlement.**

1. Documents received in evidence but not included in the settled case are not before the court on appeal. If the settled case shows that documents were received, and the certificate of settlement makes no mention of them, the fact as shown in the settled case prevails over the certificate.

**Wheat rate applied to shipments with milling in transit privilege.**

2. Under the evidence it is *held* that the wheat rate and not the wheat products rate applied to certain shipments of wheat with a milling in transit privilege; and the evidence sustains the finding of overcharges.

Appeal and Error, 4 C. J. p. 340 n. 17; p. 518 n. 37.
Carriers, 10 C. J. p. 431 n. 8; p. 433 n. 45 New; p. 456 n. 68 New.

Action in the district court for Hennepin county to recover overcharges on shipments of wheat from Minneapolis to East Joliet, Illinois. The case was tried before Salmon, J., who ordered judgment in favor of plaintiff. Defendant appealed from the judgment. Affirmed.

*Briggs, Weyl & Briggs*, for appellant.
*Harold G. Simpson*, for respondent.

DIBELL, J.

Action to recover overcharges on shipments of wheat from Minneapolis to East Joliet, Illinois, milled in transit at Faribault, Minnesota, and destined for Dorchester, Massachusetts. There was judgment for the plaintiff. The defendant appeals.

[1] Reported in 210 N. W. 282.

1.   There were introduced in evidence two published tariffs of the defendant, and other documents of less importance.   Their contents are not in evidence, except as witnesses referred to them, or quoted from them.   The certificate of settlement of the case does not mention them.   Under our practice the fact shown by the settled case prevails over the certificate.   We cannot use the documentary evidence except so far as it is a part of the record through the testimony of witnesses; and unless it appears that the omitted documents do not affect the facts found a presumption in their favor must be indulged and is controlling.   Acker Post v. Carver, 23 Minn. 567; Blake v. Lee, 38 Minn. 478, 38 N. W. 487; Clarke v. Cold Springs O. H. Co. 58 Minn. 16, 59 N. W. 632; Sage v. Rudnick, 67 Minn. 362, 69 N. W. 1096; McDonald v. White, 92 Minn. 39, 99 N. W. 1133.   It follows that the portions of the tariffs printed at the end of the paper book are not a part of the record, not included in the body of the settled case, and not incorporated by the certificate, and are not for our consideration.   The matter read into the testimony, and understandable without the printed tariffs, and sufficient and complete in itself, may be considered.   In Sage v. Rudnick, 67 Minn. 362, 69 N. W. 1096, the issue was adverse possession, and a plat with reference to which witnesses testified was not a part of the settled case.   The court said:

"Much of the testimony of the witnesses as to the topography of the land, and the parts of it which defendant or his father broke up and put under cultivation at different times, was given with reference to this map, and is wholly unintelligible without it."

And in Clarke v. Cold Springs O. H. Co. 58 Minn. 16, 59 N. W. 632, where the issue was the ownership of corporate stock, and only a portion of the stock-book, which was in evidence, was made a part of the settled case, the court said:

"The portions of it not set forth may have contained evidence on the point."

Some of the facts are undisputed, or established in accordance with the findings, and we proceed to a consideration of the merits

of the case with the record before us but with the power of inquiry limited as stated.

2. A carload of wheat, typical of the others involved in the action, originating beyond Minneapolis, was shipped from Minneapolis to Faribault, there milled, and the product waybilled to East Joliet, with Dorchester its ultimate destination. It was a shipment from Minneapolis to East Joliet, with a milling in transit privilege at Faribault. From East Joliet it went to Dorchester at established rates. The court found that the published wheat rate from Minneapolis to East Joliet was 11 cents per hundred. It found that there was a milling in transit privilege at Faribault. This privilege gave the shipper the right to ship from Minneapolis to Faribault, paying the local wheat rate, 7½ cents, mill there, ship the milled product to East Joliet, paying the difference between 11 cents and 7½ cents. The plaintiff paid 7½ cents to Faribault and 7½ cents from there to East Joliet, an overcharge, it claims, of 4½ cents.

In making its findings as to rates and transit privileges the court had the testimony of witnesses, which is included in the settled case, and in addition published Tariff 36-D, relating to grain and grain products rates, and published Tariff 28-E, relating to transit privileges, neither of which is before us. The published rate is the legal rate. Louisville & N. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. ed. 853, L. R. A. 1915E, 665.

There is really no question of the existence and nature of the milling in transit privilege. It was a right to move the wheat from Minneapolis to Faribault at the local rate, and move the product to East Joliet, and for all services pay the wheat rate from Minneapolis to East Joliet. That there was an 11 cent published wheat rate embodied in printed Tariff 36-D, not before us, is not to be questioned. The defendant's one witness, its head rate clerk of overcharge claims, substantially concedes this, but claims that Item 215 of printed Tariff 28-E, not before us, relating to transit privileges, has the effect, because of a clause providing for "rate on grain products to destination," of making the products rate, 15 cents, instead of the wheat rate, 11 cents, applicable. If these tariffs were before us our task would be easier. So far as we can see the 11

cent rate was the effective one; certainly the finding to that effect is sustained. It would be difficult to hold that a published rate, explicit in terms, was overcome by the language of Item 215, so uncertain in its application.

Six experts testified, five called by the plaintiff and one by the defendant. The five construed the tariffs in accordance with the findings; the other in harmony with the defendant's claim. The real problem is the construction of the published tariffs. The testimony of the experts does not determine the issue. They do no more than aid the court. Their testimony is helpful, but we do not reach our conclusion by weighing the testimony of one against another. The tariffs must have one construction—not a changing one from case to case.

The defendant claims that under Item 125 of Tariff 28-E there is a specific general provision making the product rate control and cites C. C. Belknap Glass Co. v. G. N. Ry. Co. 36 I. C. C. 322; W. F. Boardman Co. v. Atchison, T. & S. F. Ry. Co. 39 I. C. C. 445; and Oklahoma Nat. Live Stock Exch. v. Director General, 69 I. C. C. 660. We are unable to see the application of these cases to the record before us.

Judgment affirmed.