ROBERT G. MATTHEWS, JR. AND LORETTA G. MATTHEWS v. AERO MAYFLOWER TRANSIT CO., INC. & SECURITY STORAGE CO., INC.

No. 773DC718

(Filed 20 June 1978)

Carriers § 12— moving household goods—correct charge not given—owner's liability for charge

Defendant shipper was entitled to retain possession of plaintiffs' household goods until plaintiffs paid $339.41 more than the contract price agreed upon by the parties for moving plaintiffs' goods across the country, even though defendant had miscalculated the weight and mileage resulting in the higher charge, since defendant was prohibited by I.C.C. regulations from relinquishing possession of any freight until all tariff charges had been paid and was prohibited from charging less for any service than the charge specified by the tariffs in effect.

APPEAL by plaintiffs from *Phillips (Herbert O.), Judge.* Judgment entered 19 April 1977 in District Court, PITT County. Heard in the Court of Appeals 31 May 1978.

Plaintiffs brought this action with reference to a contract made in 1969 for moving and storage of their household goods. They allege that an agent of defendant Mayflower advised them in Pullman, Washington, that their goods weighed 2,320 pounds and that the cost of shipment from Pullman to Greenville, North Carolina, computed as a distance of 2,482 miles, would be $461.91, plus $12.50 for insurance, $13.80 for warehouse handling, $13.80 for one month's storage, and $40.25 for delivery from storage in transit, or a total of $542.26. Plaintiffs agreed to these terms. They later extended the contract for storage for four months. After they arrived in North Carolina, plaintiffs were informed that defendant Mayflower had erred both in weighing the goods and in computing the mileage and that as a result the costs of shipping were more than $200.00 higher than previously invoiced. In addition, the monthly storage rates were higher due to the increased weight. Defendant, Security Storage, pursuant to orders from Mayflower, refused to release the goods until all charges, including a separate $141.10 delivery fee, were paid. This fee covered transportation to Greenville from the storage facility in Goldsboro. Plaintiffs prayed the court to award them possession of their goods upon the payment of $595.86, the amount of the contract made in Washington, plus the additional storage charges.

Defendants counterclaimed for the full amount they alleged was due under their various tariffs, a total amount of $930.02, less the partial payment already made.

On hearing of defendants' motion for summary judgment, the court reviewed pleadings and affidavits and concluded that the motion should be granted. Accordingly, plaintiffs' action was dismissed with prejudice, and defendant was granted judgment for the unpaid balance of freight and storage charges in the amount of $339.41. Plaintiffs appealed.

*Willis A. Talton, for plaintiff appellants.*

*Taylor, Warren, Kerr & Walker, by Robert D. Walker, Jr., for defendant appellees.*

VAUGHN, Judge.

We conclude that there were no genuine issues as to any material fact and that defendants were entitled to judgment as a matter of law. We, therefore, affirm the entry of summary judgment.

The affidavit of J. R. Bruckman, manager of the Credit and Collection Department of Aero Mayflower Transit Co., states that "the plaintiffs' goods were shipped in interstate commerce under the provisions of all applicable rules and regulations of the Interstate Commerce Act . . . ." Plaintiffs offered no evidence that this was not so. Indeed, they probably could not do so. The goods were shipped from Washington to North Carolina. U.S.C.A. 49 § 302(a) provides that Part II of the Interstate Commerce Act shall "apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce." The weight of plaintiffs' goods and the distance shipped were established by affidavit of the president of Security Storage, Inc. The defendants also offered into evidence copies of Tariff No. 126-A, MF − I.C.C. No. 142, certified by the Secretary of the Interstate Commerce Commission as having full force and effect in 1969 when plaintiffs shipped their goods. By this tariff, defendants were obligated to charge the full amount invoiced by them for cross-country transportation, notwithstanding the original mistake.

By U.S.C.A. 49 § 323 the carrier is prohibited from relinquishing possession of any freight until all tariff charges have

been paid. By U.S.C.A. 49 § 317(b), the carrier is prohibited from charging less for any service than the charge specified by the tariffs in effect. Together these provisions prevent any equitable considerations from justifying a retention by the shipper of any part of a lawful tariff charge. "In short, application of tariffs as published is required regardless of the intention of the parties and irrespective of the equities existing between carriers and shippers." *National Van Lines, Inc. v. United States*, 355 F. 2d 326, 331 (7th Cir. 1966); *see Louisville & N.R.R. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915).

From the above authority, it is clear that the defendants are governed by I.C.C. regulations and are required to collect the full amount owed them under the tariffs.

Affirmed.

Judges MORRIS and MARTIN concur.