BURNHAM VAN SERVICE, INC., et al., Petitioners,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents.

No. 78-2258.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1980.

Leo C. Franey, Patrick McEligot, Bryce Rea, Jr., Washington, D.C., for petitioners.

David Popowski, I.C.C., Washington, D.C., U.S. Dept. of Justice, Robert L. Thompson, John J. Powers, III, Attys., Dept. of Justice, Washington, D.C., for respondents.

Before WISDOM, RONEY and HATCHETT, Circuit Judges.

WISDOM, Circuit Judge:

Burnham Van Service Inc., et al., members of the Household Goods Carriers Bureau (Bureau) alleged in its petition for review of an order of the Interstate Commerce Commission that the Bureau complied with all the legal requirements necessary to effect a tariff increase on the transportation of household goods in the United States effective May 15, 1976. The Interstate Commerce Commission disagreed; it permitted an increase to take effect on July 12/25, but ruled that a May 15 through July 12/25 increase was unlawful. It also ordered Bureau members to notify shippers of the possibility of refunds for shipments made between May 15 and July 12/25. We agree with the Commission that the rate increase is effective from July 12/25 only, and uphold the Commission's authority to compel notice of the overcharges.

I.

The Bureau is an association of common carriers engaged in interstate and foreign transportation of household goods. It acts as a rate bureau for its members; among other tasks, it publishes tariffs and seeks tariff increases. See 49 U.S.C. §§ 10706(b),

10762(a)(1), 49 C.F.R. §§ 1307.21–1307.50 (1979).

In April 1976, the Bureau sought a five percent rate increase for the transportation of household goods. It filed new rate schedules with the Commission pursuant to 49 U.S.C. § 10762(b)(3). Absent any action by the Commission, the five percent increase would have gone into effect on May 15. The Defense Department, however, protested the increase and asked the Commission to suspend and investigate the new rates. See 49 U.S.C. § 10708. The Commission issued an investigation and suspension order on May 14, 1976. It read in part:

> It is further ordered, that the operation of the said schedules be and is hereby suspended, and that the use thereof on interstate and foreign commerce be deferred to and including December 14, 1976, unless otherwise ordered by this Commission.

After listing the pertinent tariffs, however, the order also stated that it suspended "all matter therein insofar as it would increase present rates by more than three (3) percent".

The last quoted phrase created the confusion this suit was brought to resolve. The Bureau interpreted the order to mean that a three percent tariff increase had been approved, and would be effective on May 15 without the necessity of further action. The Bureau sent shippers a copy of the order, announced a three percent increase, and provided shippers with a "conversion chart" that they could use to calculate the rate at a tariff increased by three percent rather than at the published tariff of five percent. The chart was not filed with the Commission.

A shippers' association, The Aerospace Industries Association of America, Inc., challenged the Bureau's announcement of a three percent increase by asking the Commission whether the Bureau's chart met the statutory requirement that all tariffs be filed and state rates in money of the United States. See 49 U.S.C. § 10762(a)(2). The Bureau petitioned for review of the order insofar as it suspended the requested five percent increase.

On June 30, the Commission's Division 2 denied the Bureau's petition for review, and clarified its suspension order. The Commission struck the offending phrase "all matters therein insofar as it would increase present rates and charges by more than three (3) percent". Instead, it said the earlier order had suspended the "five (5) percent increase without prejudice to the filing of schedules providing an increase in rates and charges of no more than three (3) percent to be applied in the same manner as the suspended schedules". In response to the clarified order, the Bureau filed on July 9 tariffs effective July 12 and 25, 1976, with three percent increases. On August 27, the Commission ended the rate investigation and acceded to the three percent increase.

In September, the Defense Department sought a declaratory order that Bureau members had overcharged shippers by collecting the three percent increase during the May 15 though July 12/25 period before the Bureau had filed tariff schedules setting out the three percent increase. The Commission ruled that the increases charged during this period were overcharges within the meaning of 49 U.S.C. § 11705(b)(1) because there were no formal tariffs on file that clearly stated the rates actually charged, in violation of 49 U.S.C. § 10762. The conversion chart that the Bureau supplied to shippers was not lawfully filed and did not support the collection of higher rates.

The Bureau petitioned for reconsideration, and the General Services Administration requested that the Commission order Bureau members to identify overcharged shippers and notify them of the possibility of refunds for the overcharges. Division 2 denied the Bureau's petition and adopted the GSA's suggestion. It ordered Bureau members to identify and notify each shipper paying overcharges and to provide them with claim forms. The Bureau challenged the Commission's authority to issue the notification order. The full Commission, noting that the order did not force carriers to issue refunds but "simply aid[ed] shippers

in the discovery of claims", found statutory authority in 49 U.S.C. § 10321, which empowers the Commission "to carry out" the Interstate Commerce Act.

## II.

We need not look far to discover that no tariff increase was effective between May 15 and July 12/25. The Interstate Commerce Act sets out a series of steps a carrier must follow to effect an increase. They were not followed here.

A carrier must observe reasonable rates, 49 U.S.C. § 10702, and file its published tariff with the Commission at least thirty days prior to its effective date, 49 U.S.C. § 10762(c)(3). Carriers must also post tariffs in their offices, and transmit them to all subscribers. 49 U.S.C. § 10762(a)(2); 49 C.F.R. §§ 1307.44(h), 1307.48. Those tariffs must be "clearly and explicitly stated in cents or in dollars and cents . . . ." 49 C.F.R. § 1307.28(a)(1). *See* 49 U.S.C. § 10762(b)(1). The Commission has authority to reject any tariff that violates the Act or Commission regulations, 49 U.S.C. § 10762(e), and to suspend a tariff for up to 7 months while investigating it, 49 U.S.C. § 10708. While a tariff is suspended, the prior tariff remains in effect. *See* 49 C.F.R. § 1307.13; *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Alouette Peat Products*, 9 Cir. 1957, 253 F.2d 449, 456. The Commission's regulations require that when a new tariff is suspended, a carrier notify its subscribers of the suspension, and note the tariffs that will apply during the suspension. 49 C.F.R. § 1307.34(a)(1). In addition, when the Commission rejects a tariff as unreasonable, it may point to an appropriate one. *Trans Alaska Pipeline Rate Cases*, 1978, 436 U.S. 631, 653–54, 98 S.Ct. 2053, 2065–66, 56 L.Ed.2d 591. This option avoids, as Justice Brennan put it,

A pointless charade in which carriers . . . are required to submit and resubmit tariffs until one finally goes below an undisclosed maximum point of reasonableness and is allowed to take effect. The administrative process, after

all, is not modeled on "The Price Is Right."
436 U.S. at 653, 98 S.Ct. at 2066.

■ The Commission, however, has no statutory authority, in rejecting a tariff, to implement a different one. It may allow a tariff to take effect, suspend it, or suspend it with the proviso that some other tariff will, if filed, go into effect without the ordinary thirty-day waiting period. *Trans Alaska Pipeline Cases*, 1978, 436 U.S. 631, 651–54, 98 S.Ct. 2053, 2065–66, 56 L.Ed.2d 591. *United States v. Chesapeake & Ohio Ry. Co.*, 1977, 426 U.S. 500, 511–15, 96 S.Ct. 2318, 2324–26, 49 L.Ed.2d 14. In all cases, tariffs must be filed with the Commission before they can apply, and it is up to the carrier to file them. This result is mandated by the Act's "imperative requirements" that there always be tariffs lawfully on file that are explicit and uncomplicated. *Davis v. Portland Seed Co.*, 1924, 264 U.S. 403, 424–25, 44 S.Ct. 380, 384–85, 68 L.Ed. 762. Justice Hughes's ancient statement is still the law: "under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge". *Louisville & Nashville R. R. Co. v. Maxwell*, 1915, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853.

■ When the Commission considered the Bureau's new schedules on May 14, it had before it only two published and filed tariffs: the old one, and the proposed five percent increase. No three percent increase had been filed. The Commission could therefore approve none. That the Bureau was confused about the effect of the Commission's suspension order—and it was regrettably clumsy—cannot increase the Commission's statutory authority. The Commission cannot approve a tariff that has not been filed. Here, the original suspension order suspended the five percent increase. As the Commission made clear, by its order of June 30, it intended to say, by the language "all matter therein [is suspended] insofar as it would increase present rates by more than three (3) percent", that it would approve a three percent increase. But it did not by the suspension order approve such an increase. On July 9, the

**44**

Bureau submitted a three percent increase to take effect on July 12/25, and the Commission allowed it to take effect. No three percent increase had been submitted before July 9, and none could be in force before the effective date of that tariff.

## III.

We turn to the question whether the Commission had authority to order Bureau members to notify shippers of the possibility of a refund for increases charged before July 12/25. Courts have blessed the Commission's creative use of suspension orders to accomplish statutory goals. The Supreme Court has done so twice recently. In *United States v. Chesapeake & Ohio Ry. Co.*, 1976, 426 U.S. 500, 96 S.Ct. 2318, 49 L.Ed.2d 14, the Court approved the Commission's order conditioning the termination of a rate suspension on the railroad's investing part of the rate increase in capital expenses. And in the *Trans Alaska Pipeline Rate Cases*, 1978, 436 U.S. 631, 98 S.Ct. 2053, 56 L.Ed.2d 591, the Court approved the Commission's order conditioning the termination of a rate suspension on the carrier's promise to refund any sums eventually found to have been unlawfully charged. The Court held that "the Commission does have powers 'ancillary' to its suspension power which do not depend on an express statutory grant of authority". 436 U.S. at 654, 98 S.Ct. at 2066. The refund conditions were permissible because they were "a necessary and 'directly related' . . . means of discharging the Commission's . . . mandate to protect the public pending a more complete determination of the reasonableness of the . . rates". *Id.* at 655, 98 S.Ct. at 2067. *See also Interstate Commerce Comm'n v. B & T Transp. Co.*, 1 Cir. 1980, 613 F.2d 1182.

 The notice that the Commission prescribed in this case meets both the "directly related" and "necessary" tests. The notice requirement was directly related to the suspension order: It was an attempt to correct the tariff overcharges that resulted from the Bureau's misunderstanding of the Commission's order. And it was necessary be-cause, as the GSA observed in its petition, the Bureau carriers were "the only group that [could] readily identify affected individuals". The order goes no further than it has to; it leaves the filing and payment of claims to shippers and carriers, in accord with the statutory scheme. We find nothing in the Act to preclude such an order to provide notice. On the contrary, the order is consistent with the Act's purpose of providing and maintaining reasonable rates for transportation. *See* 49 U.S.C. §§ 10101 (a)(4), (b).

The orders of the Interstate Commerce Commission are AFFIRMED and the petition for review is DISMISSED.