CSX TRANSPORTATION, INC. as successor to Seaboard Coastline Railroad Company, Plaintiff,

v.

**ATLANTIC KRAFT CORPORATION, Defendant.**

**ATLANTIC KRAFT CORPORATION, Third–Party Plaintiff,**

v.

AMERICAN CARIBE LINES, INC., Robert E. Brizendine, as Trustee of American Caribe Lines, Inc. and Boyd L. Hobbs, Third–Party Defendants.

**No. 87 Civ. 2409 (PKL).**

United States District Court, S.D. New York.

March 8, 1988.

Michael J. Siris, New York City, for plaintiff.

Jeffrey M. Herrmann, Wachtell, Manheim & Grouf, New York City, for defendant.

## ORDER

LEISURE, District Judge:

Plaintiff brought this action to recover tariff freight charges on interstate railroad shipments, pursuant to the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq.* Plaintiff has moved for summary judgment, claiming that because applicable tariffs were filed by plaintiff with the Interstate Commerce Commission (ICC), defendant must now pay the full tariff charges for its shipments—even if plaintiff misquoted the applicable rate or accepted a lower rate of payment at the time the shipments were made.

Defendant has cross-moved for summary judgment, claiming that the correct charges are not to be determined by plaintiff's tariff, but instead by an agreement between defendant and third-party defendant American Caribe Lines ("Caribe")—an entity which defendant claims acted as plaintiff's agent. Defendant claims that in 1984, it contracted with Caribe to have certain goods carried from Hartsville, South Carolina to Newark, New Jersey, via plaintiff's predecessor, Seaboard Coastline Railroad Company ("Seaboard"). Defendant claims that at the time this contract for carriage of goods was made, Caribe had filed an applicable tariff with the ICC. The land component of the Caribe tariff provided for a price of $1.27 CWT for the carriage of goods from Hartsville, South Carolina to Newark, New Jersey. Defendant agreed to make all payments directly to Caribe.

The relevant goods were carried by Seaboard, in 93 rail boxcars, from November 14, 1984, until January 16, 1985. Consignments for the first groups of boxcars were made by Caribe on defendant's behalf. In late November, however, Caribe became the subject of bankruptcy proceedings before the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division. Soon thereafter, Caribe stopped making the consignments for defendant, and defendant instead gave consignment instructions directly to Seaboard. After the bankruptcy proceedings began, Caribe also requested that defendant pay

directly to Seaboard all bills for the shipments. Seaboard then rendered bills to defendant at rates ranging from $1.67 CWT to $1.80 CWT. Defendant, however, considered these charges incorrect, and instead sent payment to Seaboard at a rate of $1.27 CWT—the rate originally quoted by Caribe.

The federal courts have long held that regardless of the equities in a given case, a shipper must pay the full tariff filed by the carrier with the ICC:

> Deviation from [the applicable rate] is not permitted upon any pretext.... Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Louisville & Nashville Railroad v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). *See also Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 343–44, 102 S.Ct. 1815, 1820–21, 72 L.Ed.2d 114 (1982).

However, on at least one recent occasion, the ICC has ruled that where a carrier practice was unreasonable, the carrier could be precluded from collecting the full tariff charges. *See Seaboard System R.R., Inc. v. United States*, 794 F.2d 635 (11th Cir.1986).[1] Although in that ruling "the Commission did not abolish the requirement ... that carriers must charge the tariff rate," *Id.* at 638, the Commission did refuse to allow the carrier to collect its full tariff when, among other factors, "the shipper relied upon the carrier's continuing conduct in misleading the shipper as to the applicable rate under a confusing tariff." *Id.* In upholding the ICC ruling, the Court of Appeals explained that:

> The Commission acknowledged in its order that it too [like the courts] historically has refused to order the waiver of undercharges based on carrier rate misquotations, because granting such relief

might lead to intentional "misquotations" by carriers seeking to discriminate in favor of particular shippers. Nonetheless, the courts have never held that the Commission lacks authority to prohibit the unreasonable collection of undercharges. .... As the Commission stated, finding a carrier practice unreasonable is the kind of determination that lies in the primary jurisdiction of the Commission.

*Id.* (citation omitted).

Generally, questions regarding "the validity of a rate or practice included in a tariff filed with an agency" fall within the "primary jurisdiction" of that agency. *Nader v. Allegheny Airlines*, 426 U.S. 290, 304, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976). In *Nader*, the Supreme Court explained that "the doctrine of primary jurisdiction 'is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties'." *Id.* at 303, 96 S.Ct. at 1988 (citation omitted). Thus,

> [e]ven when common-law rights and remedies survive and the agency in question lacks the power to confer immunity from common-law liability, it may be appropriate to refer specific issues to an agency for initial determination where that procedure would secure '[u]niformity and consistency in the regulation of business entrusted to a particular agency' or where 'the limited functions of review by the judiciary [would be] more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.'

*Id.* at 303–04, 96 S.Ct. at 1986–87 (citations omitted).

Applying this standard, the question of whether defendant must pay the tariff filed by plaintiff, under the circumstances of the present case, is properly within the primary jurisdiction of the ICC. The issue of whether plaintiff's tariff is applicable to

---

1. In *Seaboard*, the Eleventh Circuit reviewed the ICC order pursuant to 28 U.S.C. § 2321(a).

defendant is therefore referred to the ICC for its determination.[2] The above-captioned action is hereby placed on suspense pending the ICC's ruling.

SO ORDERED.

2. This Court will retain jurisdiction to review the decision of the ICC. 28 U.S.C. § 1336(b) gives a district court jurisdiction to review an ICC decision whenever that court has referred a question to the ICC for its determination.