**AMERICAN TELEPHONE & TELEGRAPH COMPANY,**
**Plaintiff,**

v.

**NOS COMMUNICATIONS, INC.**
**and NOS, Inc., Defendants.**

**Civ. A. No. 92–4172 (MTB).**

United States District Court,
D. New Jersey.

March 5, 1993.

Pitney, Hardin, Kipp & Szuch by Frederick Lee Whitmer, Morristown, NJ.

Podvey, Sachs, Meanor & Catenacci by H. Curtis Meanor, Newark, NJ.

OPINION

BARRY, District Judge.

I.

Currently before the court is the motion of plaintiff AT & T for summary judgment on Counts I and III of the complaint. Count I alleges that NOS Communications, Inc. and NOS, Inc. (together "NOS"), beginning in 1990, subscribed to and used a long distance telephone service called Software Defined Network service ("SDN") offered by AT & T pursuant to F.C.C. Tariff No. 1, that AT & T presented a bill for such service, and that the bill was not paid by NOS. Complaint, Count I. Count III makes similar allegations with regard to a different long distance telephone service offered by AT & T, called Distributed Network Service ("DNS"), to which NOS Communications, Inc. subscribed and used beginning in June, 1991. Complaint, Count III. This service, too, is offered pursuant to a tariff filed with the F.C.C. The thrust of the counts of the complaint on which AT & T now seeks summary judgment is that NOS subscribed to a long distance telephone ser-

vice governed by a filed tariff, received the service, was billed, and did not pay.

NOS has filed an answer to the complaint and counterclaims alleging attempted monopolization of the relevant market, violations of the Communications Act of 1934, unfair competition, tortious interference with contract and business advantage, breach of contract, misappropriation of trade secrets, and slander.[1] More particularly to the motion *sub judice*, NOS asserts that summary judgment is not appropriate on Counts I and III of the complaint because AT & T did not provide the services it was obligated to provide under the tariff.

II.

Many of the facts underlying the instant motion are undisputed. NOS is a switchless reseller of interstate long distance telephone services. Affidavit of Neal B. Bobys, dated February 5, 1993 (hereinafter "Bobys Aff.") ¶ 2. As such, it does not operate its own switching system but, rather, subscribes to a long distance network established and operated by a facilities-based carrier, such as AT & T. *Id.* AT & T is required by the Federal Communications Commission ("FCC") to offer for unlimited resale any long distance telecommunication service it provides under tariff. *In re Regulatory Policies Concerning Resale and Shared Use of Common Carrier Services and Facilities*, 60 F.C.C.2d 261 (1976), *recon.*, 62 F.C.C.2d 588 (1977), *aff'd sub nom.*, *AT & T v. F.C.C.*, 572 F.2d 17 (2d Cir.), *cert. denied*, 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978); *In the Matter of Regulatory Policies Concerning Resale and Shared Use of Common Carrier Domestic Public Switched Network Services*, 83 F.C.C.2d 167 (1980). Included in this are the SDN and DNS services provided under AT & T Tariff No. 1.

NOS subscribed to SDN service in 1990, while NOS Communications, Inc. (but not NOS, Inc.) subscribed to DNS service in June, 1991. Declaration of Timothy W. Evans, dated October 2, 1992 (hereinafter "Evans Decl.") ¶ 5; Bobys Aff. ¶ 7. SDN is a

---

1. Although NOS, Inc. and NOS Communications, Inc. filed separate answers and counter-claims, the counterclaims are identical.

virtual private network service which allows a subscriber to establish long distance lines to serve multiple locations without the need for dedicated private lines. Bobys Aff. ¶ 8. At some point AT & T revised its SDN offering to provide "one-plus" dialing and large volume discounts under its Expanded Volume Plan ("EVP"). *Id.* Resellers such as NOS subscribe to SDN service and obtain large discounts under the EVP and then resell SDN service to businesses which do not have a sufficient volume of calls to qualify for the EVP discounts individually. By providing SDN service at a discount to these end user businesses, resellers can make a profit while the end users receive long distance service at a cost which is less than the cost of purchasing from AT & T directly. *Id.* ¶ 9. F.C.C. Tariff No. 1 provides that payment of invoices is due upon presentation. Declaration of Donna Stock, dated October 2, 1992 ("Stock Cert.") ¶ 8. AT & T bills the reseller and the reseller bills its customer. For this purpose, NOS retained AT & T College and University Systems, an AT & T subsidiary, to bill NOS customers on NOS' behalf. Bobys Aff. ¶ 10.

AT & T contends in support of its motion for partial summary judgment that it provided long distance telecommunications services to NOS and billed NOS under a filed tariff and that NOS has failed to pay for those services. This, AT & T urges, is sufficient to warrant partial summary judgment. NOS, not surprisingly, does not share this viewpoint. Rather, NOS claims that there is a genuine issue of material fact as to whether AT & T provided the network services consistent with its obligations under the tariff and that, until this factual dispute is settled, it need not pay the amounts which AT & T claims are due.

### III.

Prior to discussing the state of the factual record before the court, it is helpful to examine the parties' differing views as to the governing law. NOS does not take issue with the filed tariff doctrine, which provides that "a regulated carrier *must* charge the tariff rate established with the appropriate regulatory agency, even if it has quoted or charged a lower rate to its customer." *Marco Supply Co. v. AT & T Communications, Inc.*, 875 F.2d 434, 436 (4th Cir.1989) (emphasis in original); *see also Louisville & Nashville Railroad v. Maxwell,* 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915). Rather, it contends that the filed tariff doctrine is inapplicable here and that it need not pay AT & T the money owed for services up front where it disputes whether the services were provided as required by the tariff.

The parties were unable, after abundant briefing, to locate any case factually on point. In support of its motion, AT & T cites ample authority relating to the filed tariff doctrine. All of these cases, however, relate to challenges made to the *rates* charged by the carrier.[2] As NOS points out, it does not dispute the rates it was charged but, rather, claims that the services provided were not those which AT & T had an obligation to perform under the tariff. The only case dealing with a party's refusal to pay a tariffed rate due to a dispute over the nature and extent of services provided, and cited by both parties, is *Mocatta Metals Corp. v. ITT World Communications, Inc.*, 54 F.C.C.2d 104 (1976).

*Mocatta* involved a dispute between Mocatta and ITT over international telecommunications services to be provided by ITT pursuant to a contract governed by a filed tariff. *Id.* at 106–07. Following delays and problems in installation and service, Mocatta withheld payment for the services. *Id.* at 107. Eventually, after a temporary court ordered stay was lifted and the FCC refused a stay, ITT terminated service for nonpayment. *Id.* at 114–15. Mocatta brought an action against ITT alleging breach of contract, negligence, violation of section 201 of the Communications Act of 1934, rendering a

---

**2.** This includes the most recent case cited by AT & T, *Cincinnati Bell Telephone Co. v. Allnet Communication Services, Inc.,* 810 F.Supp. 217 (S.D.Ohio 1992). In that case, the court invoked the filed tariff doctrine and granted summary judgment in favor of the carrier, ruling that the party challenging *the reasonableness of the rates charged under the tariff* had to pay money owed for services while its challenge to the rates was pending. *Id.* at 221.

bill in excess of the amount owed, and failure to comply with certain portions of the tariff.

The administrative law judge ("ALJ") began his analysis of the legal issues by noting that "a carrier's filed tariff is controlling on the rights and obligations of the customer and the carrier." *Id.* at 115. In light of this, he characterized the issues before him:

> With reference to this proceeding, the basic issue pervading all of the specified issues in this controversy between the complainant, Mocatta, as customer, and the defendant, ITT, as common carrier, involves a determination of whether the services contracted for under a filed tariff were in fact provided. ITT's filed Tariff No. 43 concerns the provision of socalled Private Line Overseas Channel Service encompassing "requisite channel facilities for direct transmission of record communication or of alternate record and voice communication between terminals as specified ..." If the service provided by ITT to Mocatta was in accordance with the filed tariff the complaint must fail.

*Id.* Addressing a dispute between the parties as to the terms of the contract, the ALJ recognized that to the extent the contract purported to provide for services beyond that which was authorized by the tariff, the tariff would be overriding and controlling. *Id.* at 116.

It is important to note that at the time the ALJ's decision was issued, Mocatta had not yet paid ITT for the services rendered. Mocatta had instituted an action in federal district court prior to commencing its action before the FCC; ITT had filed a counterclaim seeking payment for the services rendered. *Id.* at 105. Prior to permitting Mocatta to proceed on the merits of its claims, the Commission required it to choose the forum in which it wished to pursue its claims. *Id.* Mocatta chose to proceed before the FCC and dismissed its claims in federal court; ITT's counterclaim for payment was stayed by the federal court pending a disposition by the Commission on Mocatta's

claims. *Id.* Thus, Mocatta's claims that the services it received were not in accordance with the tariff were permitted to proceed to the merits, including "extensive prehearing discovery procedures," *id.*, while the payments due ITT under the tariff, the subject of the counterclaim in federal court, remained unpaid. While the issue of whether a party claiming that the services it received were not in accordance with the tariff under which they were ostensibly provided was not specifically at issue in *Mocatta,* that case nevertheless establishes that, at least in that instance, payment under the tariff was not absolutely required during the pendency of the litigation over the quality of service. To this extent, *Mocatta* must be viewed as supporting NOS' position.

AT & T also argues that a decision already issued by the FCC in this dispute forecloses NOS' "self-help" remedy. The Commission had before it in *In the matter of NOS Communications, Inc. v. American Telephone and Telegraph Co.,* No. DA 92–1594 (F.C.C. December 2, 1992) NOS' request for a temporary stay of the FCC policy which would otherwise have permitted AT & T to terminate service for nonpayment of charges. AT & T Rule 12G Statement, Exh. G. The issue in that proceeding, i.e. termination of services, is different from that presented here, i.e. whether charges must be paid prior to resolution of a customer's dispute over the nature of the services provided. While the Commission expressed its disapproval of self-help, it did not do so categorically:

> The Commission previously has stated that a customer, even a competitor, is not entitled to the self-help measure of withholding payment for tariffed services *duly performed* but should first pay, under protest, the amount allegedly due and then seek redress if such amount was not proper under the carrier's applicable tariffed charges and regulations.

*Id.* (emphasis added).[3] This statement was made in the context of the Commission's

---

**3.** Moreover, the case cited by the Commission for this proposition, *In the Matter of MCI Telecommunications Corp.,* 62 F.C.C.2d 703 (1976), eschewed the self-help of withholding payment in a dispute in which MCI refused to pay Pacific Telephone and Telegraph Co. ("PT & T") money owed under a filed tariff under the theory that it was overbilled for the services rendered by PT & T because AT & T had refused to provide lower priced services desired by MCI under one of its

finding that NOS had failed to demonstrate that it would be irreparably injured if forced to either pay the disputed amounts or face termination of services. Thus, the Commission's prior action does not speak to the issue now before the court.

Although it is a close question, and one which has not been directly addressed in any case brought to the court's attention, the court concludes that AT & T is not entitled to judgment on Counts I and III as a matter of law if NOS can demonstrate a genuine factual issue as to whether the services were, in fact, provided in accordance with the filed tariff.

IV.

There is no dispute that AT & T provided *some* service to NOS—i.e., that phone calls were connected. Rather, the factual inquiry relevant in the context of this motion is whether NOS can demonstrate that there is a genuine issue of material fact as to whether AT & T provided the services it was required to provide under the tariff. If follows, then, that the requirements of the tariff must be examined and compared to the factual issues raised by the evidence submitted by NOS. AT & T's tariff provides in part:

> Provision of Services—Custom Network Services are fully supported by the Company through engineering, installation and maintenance efforts. The Company will assure that each service functions properly within its specified transmission and switching parameters.

Tariff No. 1, Def. Exh. D, § 6.2.5. The tariff further provides that AT & T will make every reasonable effort to assure that service ordered is furnished on the due date. *Id.* § 2.5.10(B).

The affidavits submitted by NOS in opposition to AT & T's motion for summary judgment raise factual issues which relate to the provision of services under the tariff. Specifically, there is at least some evidence to demonstrate that there were significant delays in provisioning, billing, and terminating

NOS customers. *See* Bobys Aff. ¶¶ 11, 13; Affidavit of Samuel P. Delug, dated February 6, 1993, Def. Exh. B, ¶¶ 5–6; Affidavit of Michael Niedecker, dated February 5, 1993, Def. Exh. C, ¶¶ 4–6, 8–10, 12–15. Thus, the court concludes that NOS has shown that there are factual disputes which relate to whether AT & T provided services in accordance with the tariff.

AT & T raises one final argument in an attempt to neutralize the factual issues raised by NOS. It argues that the three letter agreements signed by NOS in June, August, and September of 1992 should foreclose NOS from disputing the nature of the services it received. These three letters represent successive agreements between NOS and AT & T to work out NOS' past due payments to AT & T. AT & T would have the court treat these letter agreements as admissions both of amounts due and adequacy of services. *See* Stock Decl., Exh. A; Ryan Decl., Exh. A and B. NOS, in response, claims that the letters were signed under the duress of AT & T's threats to discontinue long distance service for NOS. NOS cites as support for this claim a June 29, 1992 letter from AT & T employee Donna Stock to Eugene Sandler of NOS which purported to be a final notice that services would be discontinued unless payment was received. *See* Def.Surreply Br., Exh. 1.

The court will not now decide the legal force and effect of these letters. NOS does not now, nor has it ever, disputed before this court the amounts billed under the tariff. Rather, its dispute relates to the nature and extent of services provided by AT & T. The letter agreements do not address the issue or purport to waive any claims in that regard and cannot obviate the factual issues which NOS has raised. Therefore, AT & T's motion for summary judgment on Counts I and III of the complaint must be denied.

ORDER

This matter having come before the court upon the motion of plaintiff for summary

---

tariffs and therefore forced MCI to accept a higher priced tariff service from PT & T. Thus, there was no dispute that PT & T had provided the tariffed services properly. The Commission

noted that MCI's recourse was to challenge AT & T's refusal as violative of the Communications Act of 1934. *Id.* at 705–06.

judgment on Counts I and III of the complaint; and the court having considered the submissions of the parties both in support of and in opposition to the motion [1] without oral argument, pursuant to Fed.R.Civ.P. 78;

IT IS, for the reasons expressed in this court's opinion of even date, hereby

ORDERED that plaintiff's motion for summary judgment on Counts I and III of the complaint is denied.

---

1. The court permitted additional briefing to the extent of a surreply brief from NOS and a sur-surreply brief from AT & T. Without permission or prior notification, NOS submitted an additional brief—a sur-sur-surreply brief. This brief was in accordance with neither the General Rules nor the court's directive and, therefore, was not considered.