In re LEE WAY HOLDING
COMPANY, Debtor.

Frederick M. LUPER, Trustee, Plaintiff,

v.

CAPITAL CONVEYOR, Howard Hill,
Inc., Monroe, and University of
Chicago Hospital, et al., Defendants.

Bankruptcy No. 2–85–00661.
Adv. Nos. 2–87–0071, 2–87–0077,
2–87–0081 and 2–87–0087.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Aug. 15, 1989.

See also, Bkrtcy., 100 B.R. 950; Bkrtcy.,
104 B.R. 881.

Frederick M. Luper, Columbus, Ohio, Chapter 11 Trustee.

Ernest V. Thomas III, Cincinnati, Ohio, Louis J. Wade, Kansas City, Mo., for plaintiff.

James W. Muldoon, David Greim, Worthington, Ohio, William J. Augello, Huntington, N.Y., for defendants.

## ORDER ON MOTION OF CERTAIN DEFENDANTS FOR REFERENCE TO INTERSTATE COMMERCE COMMISSION

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This cause came on for consideration upon the Motion of Certain Defendants for Transfer and Reference of Issues to the Interstate Commerce Commission and for Stay of Adversary Proceeding, and for other relief. The Motion for Reference is combined with four other Motions seeking various types of relief, including severance, dismissal, and determination that this is a non-core proceeding. However, only the Motion for Reference shall be considered here. The other aspects of the Motion shall be resolved by separate Order. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District.

The moving Defendants (collectively "the Defendants") are from each of the above-captioned adversary proceedings as follows:

| | |
|---|---|
| Adv. No. 2–87–0071 | Coats & Clark Sales Corp. |
| Adv. No. 2–87–0077 | Hydrotex, Inc. |
| Adv. No. 2–87–0081 | Nudo Products, Inc. |
| | Murray Industries, Inc. |
| | National Metals Company |
| | National Potteries [1] |
| | North American Enterprises |
| Adv. No. 2–87–0087 | Western Mining Corp. |
| | Western Publishing Co., Inc. |

The Plaintiff, Frederick M. Luper, Trustee for Debtor Lee Way Holding Company ("the Plaintiff" or "the Trustee"), filed these adversary proceedings against numerous defendants, including the moving Defendants, under the Interstate Commerce Act, 49 U.S.C. § 10101, et seq., seeking to collect accounts receivable allegedly due the bankruptcy estate. These receivables consist of undercharges allegedly resulting from differences between amounts actually paid to the Debtor for freight shipments in which each Defendant was a liable party, and the amounts which should have been paid pursuant to the tariffs lawfully on file with the Interstate Commerce Commission ("ICC" or "the Commission"). The Defendants collectively answered the Plaintiff's Complaint and asserted numerous affirmative defenses, including (a) the rates underlying the charges are not the legally applicable rate; (b) tariff publication error, misrepresentation or mistake by the Plaintiffs, which constitute unreasonable practices; (c) the rates are unreasonably high; (d) waiver; (e) fraud; (f) set-off; (g) laches;

---

1. Nissan Motor Corp. was also a moving Defendant; however, judgment was entered against Nissan in the amount of $1217.43 on June 5, 1989. Therefore, the Motion is moot as to Nissan.

and (h) accord and satisfaction. The movants seek referral of the issues to the Interstate Commerce Commission under the doctrine of primary jurisdiction.

When the Court is faced with an issue which calls into question an area of special expertise of an agency, the doctrine of primary jurisdiction allows the Court to suspend proceedings pending referral of the issue to the agency for its official position. The doctrine applies whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. In *Far East Conference v. The United States,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952), the Supreme Court explained the use of primary jurisdiction as follows:

> [I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as the premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

342 U.S. at 574–75, 72 S.Ct. at 494, 96 L.Ed. at 582.

The Plaintiff argues that under the "filed rate doctrine" a carrier is required to charge and the shipper is required to pay the rate in the carrier's tariff filed with the ICC. No deviation from the filed rate is permitted. The Court need only refer to the tariff to determine the amount of the Defendant's indebtedness; thus no special expertise of the ICC is needed to resolve the dispute and referral is unnecessary.

The filed rate doctrine is based upon 49 U.S.C. § 10761(a) which provides that:

> A carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that effects the value of that transportation or service, or another device.

The provision has been strictly construed, beginning with *Louisville and Nashville R.R. v. Maxwell,* 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915). *Maxwell* held, in short, that shippers who are charged less than the applicable tariff may be forced to pay the difference between the rate actually charged and the carrier's published rate. Even an intentional misquotation by the carrier will not relieve the shipper/customer from payment of the full obligation. *Maxwell,* 237 U.S. at 97, 35 S.Ct. at 495. As explained by Justice Hughes:

> Under the Interstate Commerce Act, the rate of a carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are *charged with notice* of it, and they as well as the carrier must abide by it.... Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it may work hardship in some cases, but it embodies the policy which has been adopted by Congress in regulation of interstate commerce in order to prevent unjust discrimination. (Emphasis added.)

*Maxwell,* 237 U.S. at 97, 35 S.Ct. at 495, 59 L.Ed. at 853. Maxwell and its progeny have led the ICC and the lower courts to refuse consideration of equitable defenses in suits by carriers to collect undercharges, until recently.

The Defendants argue that the Motor Carrier Act passed by Congress in 1980, which substantially deregulated the trucking industry, warrants reconsideration of the filed rate doctrine. However, Congress did not amend § 10761 and, in an analogous situation, the Supreme Court has refused to give an expansive reading to the Motor Carrier Act. *See, Square D Company v. Niagara Frontier Tariff Bureau,* 476 U.S. 409, 106 S.Ct.1922, 90 L.Ed.2d 413 (1986). In *Square D,* the plaintiffs asserted that the *Keough* doctrine had been impliedly repealed by the Motor Carrier Act and argued that allowing antitrust actions would promote the purposes of the Act. The Supreme Court, however, refused to read into the Act an implied repeal of the *Keough* doctrine, stating that:

... Congress must be presumed to have been fully cognizant of this interpretation of the statutory scheme, which has been a significant part of our settled law for over half a century and that Congress did not see fit to change it when Congress carefully reexamined this area of the law in 1980.

*Square D,* 106 S.Ct. at 1928 (Footnote omitted). The Fifth Circuit Court of Appeals has so held in a case involving collection of undercharges. *Supreme Beef Processors, Inc. v. Yaquinto (Matter of Caravan Refrigerated Cargo, Inc.),* 864 F.2d 388 (5th Cir.1989).

■ The Defendants also point to *National Industrial Transportation League—Petition to Institute Rule Making on Negotiated Motor Common Carrier Rates, Ex Parte No. MC–177,* 3 I.C.C.2d 99, 1986 Fed.Carr.Cas. (CCH) ¶ 37,284 (October 4, 1986), in which the ICC has reversed its previous position regarding equitable defenses. In *National Industrial Transportation League ("NITL"),* the Commission expressed its decision to allow consideration of equitable defenses in disputes before the ICC regarding reasonableness of practice. However, the ICC's change in policy as illustrated by *NITL,* is not binding upon this Court. However good the intentions of the ICC may be, the ICC cannot legislate to change existing law. That law presently requires that this Court apply the fixed rate doctrine as enunciated by 49 U.S.C. § 10761 and the *Maxwell* decision by the Supreme Court. The discussion by the ICC in *NITL* did not and cannot usurp the legislative duties of Congress. *See, Supreme Beef, supra.*

■ Numerous cases have been cited by each party in support of their respective positions. In fact, it is difficult to reconcile the decisions of the various courts. It appears to this Court that there lies a distinction between reasonableness of the published tariff and reasonableness in practices of the carrier and/or collection of the published tariff. While both may be within the primary jurisdiction of the ICC, reasonableness of a carrier's practices or reasonableness of collection of the published tariff (i.e. undercharges), are not factors which can be considered by the Court within the context of the Plaintiff's claim. *See, Supreme Beef, supra.* As set forth in *Maxwell, supra,* and other cases cited above, equitable considerations cannot be considered. *See also, Farley Transportation Company, Inc. v. Santa Fe Trail Transportation Company,* 778 F.2d 1365 (9th Cir.1985); *Western Transportation Company v. Wilson & Company, Inc.,* 682 F.2d 1227 (7th Cir.1982); *Delta Traffic Service, Inc. v. The Sun Chemical Dispersions Division,* 1988 Fed.Carr.Cas. (CCH) ¶ 83,415 (S.D.Ohio Sept. 14, 1988); *Delta Traffic Service, Inc. v. E.L. Mustee & Sons,* 1988 Fed.Carr.Cas. (CCH) ¶ 83,407 (N.D.Ohio May 12, 1988). Not all courts which have considered the issue have recognized the issue of reasonableness of the tariff as basis for referral to the ICC. However, the Supreme Court specifically stated in *Maxwell, supra,* that shippers as well as the carrier must abide by the published rate "unless it is found by the Commission to be unreasonable." *Maxwell,* 237 U.S. at 97, 35 S.Ct. at 495. *See also, Western Transportation Company,* 682 F.2d 1227, 1231.

■ The Defendants raised the reasonableness of the rates as well as other affirmative defenses in their Answer. Specifically, in their First Affirmative Defense

they raise the issue of whether the Plaintiffs are charging the legally applicable rate. In their Third and Fourth Affirmative Defenses, the Defendants raise reasonableness of the rate for the services rendered by Lee Way. In their 19th Affirmative Defense, Defendants assert that Lee Way was a motor contract carrier rather than a common carrier service and therefore the filed rate doctrine is not applicable. It appears that under the doctrine of primary jurisdiction, these issues may be more appropriately addressed by the ICC. However, this Court shall refer to the ICC only those aspects of the case. As the ICC recognized, it is without jurisdiction to waive undercharges. *NITL, supra.* Furthermore, even if the ICC were to determine equitable defenses were warranted, this Court must follow established precedent, which does not recognize equitable defenses. Upon decision by the ICC, this matter shall be subject to final disposition by this court pursuant to 28 U.S.C. § 1334, § 1336(b) and § 157.

█ Finally, the Court is concerned about potential delay in this case by virtue of this Order. The Trustee has advised the Court that issues referred to the ICC have substantially delayed litigation in the referring court, in some instances up to two years passing without resolution. In light of the Court's interest in prompt resolution of issues and expeditious administration of this estate, Defendants will be required to commence procedures before the ICC within fifteen (15) days of the date of entry of this Order. Upon commencement of the procedures before the ICC, counsel for the Defendants shall file a notice of same in this case, attaching a copy of the petition or such other documentation as is used to commence procedures. Should the Defendants wish to certify all or a portion of the record before this Court to the ICC, Defendants shall file a designation of the items to be included in the record to the ICC within ten (10) days of the date of entry of this Order.

In accordance with the foregoing, it is

Ordered that the Motion of Certain Defendants for Transfer and Reference of Issues to the Interstate Commerce Commission and for Stay of Adversary Proceeding is granted. This Court hereby refers to the ICC the issue of (a) the reasonableness of rates charged by the Plaintiff for services rendered by Lee Way Holding Company, and (b) whether Lee Way Holding Company is subject to the published rates as a motor common carrier service. Upon resolution by the ICC, the ICC shall forward a copy of its Order to this Court. This adversary proceeding is stayed as to the moving Defendants until entry of the Order by the ICC, or until further Order of this Court. It is further

Ordered that the Defendants shall commence procedures before the ICC within fifteen (15) days of the date of entry of this Order, and shall contemporaneously file a notice of same with this Court. In the event that Defendants wish to certify a portion of this record to the ICC, Defendants shall file a designation of the items to be referred to the ICC within ten (10) days of the date of entry of this Order.

IT IS SO ORDERED.