In re LEE WAY HOLDING COMPANY, Debtor.

Frederick M. LUPER, Chapter 11 Trustee, Plaintiff,

v.

Marmon KEYSTONE, et al., Defendants.

Bankruptcy No. 2–85–00661.
Adv. No. 2–87–0080.

United States Bankruptcy Court, S.D. Ohio, E.D.

April 3, 1990.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, Chapter 11 Trustee.

Louis J. Wade, Culp & Wade, Kansas City, Mo., Ernest V. Thomas, III, Thomas & Thomas, Cincinnati, Ohio, for trustee.

Thomas F. McFarland, Jr., Belnap, Spencer, McFarland, Emrich & Herman, Chicago, Ill., for defendant, Midwest Drywall Co., Inc.

## OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter is before the Court on the Motion of Defendant, Midwest Drywall, Inc. ("Midwest" or "the Defendant") for Vacation of Stay, for Summary Judgment and for Award of Reasonable Attorneys' Fees and Costs. The Plaintiff filed a Cross–Motion for Summary Judgment against Midwest. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following Opinion and Order constitutes findings of fact and conclusions of law.

The Plaintiff, Frederick M. Luper, Trustee for Debtor Lee Way Holding Company ("the Plaintiff" or "the Trustee"), filed this adversary proceeding against numerous defendants, including Midwest, under the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.*, seeking to collect accounts receivable allegedly due the bankruptcy estate. These receivables consist of undercharges resulting from differences between amounts actually paid to the Debtor for freight shipments in which each defendant was a liable party, and the amounts which allegedly should have been paid pursuant to the tariffs lawfully on file with the Interstate Commerce Commission ("ICC" or "the Commission"). The Defendant answered the Plaintiff's Complaint and simul-

taneously requested the Court to refer this matter to the ICC under the doctrine of primary jurisdiction, to address an issue of unreasonable practice. In November, 1988, the Court granted Midwest's unopposed Motion for Referral. On September 29, 1989, the ICC rendered its decision, finding that Lee Way had engaged in unreasonable practices and prohibiting collection of undercharges from Midwest. It is upon that decision that Midwest now seeks a judgment, asserting that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law based on those facts. The Trustee counters that the ICC allowed the defense of unreasonable practices, in contravention of the ruling of the Supreme Court in *Louisville & Nashville R.R. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915), that there are no issues of fact and that he, rather than Midwest, is entitled to judgment.

Rule 56(c) of the Federal Rules of Civil Procedure is made applicable to proceedings in bankruptcy by virtue of Bankruptcy Rule 7056. Rule 56(c) states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Recognizing that the moving party has the burden of demonstrating the absence of dispute as to any material fact, the United States Supreme Court observed in the case of *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962) that:

> On summary judgment, the inferences to be drawn from the underlying facts contained in such materials [pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits] must be viewed in the light most favorable to the party opposing the motion.

The purpose of summary judgment was articulated by Judge Graham of this dis-

trict when he stated in *Banks v. Rockwell Intern. N. Am. Aircraft Operations*, 666 F.Supp. 1053, 1056 (S.D.Ohio 1987) *affirmed*, 855 F.2d 324 (6th Cir.1988), that:

> Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy, and inexpensive determination of every action". *Celotex Corp. v. Catrett*, 477 U.S. 317 at 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 [1986] (quoting Fed.R.Civ.P. 1). [Other citation omitted].

Judge Graham, in citing the case of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), observed that under Rule 56(c):

> [The] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. [Emphasis in original; other citation omitted].

The Plaintiff argues that under the "filed rate doctrine" a carrier is required to charge and the shipper is required to pay the rate in the carrier's tariff filed with the ICC. No deviation from the filed rate is permitted. The Court need only refer to the tariff to determine the amount of the Defendant's indebtedness.

The filed rate doctrine is based upon 49 U.S.C. § 10761(a) which provides that:

> A carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that effects the value of that transportation or service, or another device.

The provision has been strictly construed, beginning with *Louisville and Nashville*

*R.R. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915). *Maxwell* held, in short, that shippers who are charged less than the applicable tariff may be forced to pay the difference between the rate actually charged and the carrier's published rate. Even an intentional misquotation by or rate negotiated with the carrier will not relieve the shipper/customer from payment of the published tariff. *Maxwell*, 237 U.S. at 97, 35 S.Ct. at 495. As explained by Justice Hughes:

> Under the Interstate Commerce Act, the rate of a carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are *charged with notice* of it, and they as well as the carrier must abide by it.... Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it may work hardship in some cases, but it embodies the policy which has been adopted by Congress in regulation of interstate commerce in order to prevent unjust discrimination. [Emphasis added.]

*Maxwell*, 237 U.S. at 97, 35 S.Ct. at 495, 59 L.Ed. at 853. *Maxwell* and its progeny have led the ICC and the lower courts to refuse consideration of equitable defenses in suits by carriers to collect undercharges, until recently.

In 1986, the ICC adopted a policy statement holding that, in the post-Motor Carrier Act of 1980 environment, the filed rate doctrine did not necessarily bar equitable defenses. *National Industrial Transpor-tation League—Petition to Institute Rule Making on Negotiated Motor Common Carrier Rates, Ex Parte No. MC–177*, 3 I.C.C.2d 99, 1986 Fed.Carr.Cas. (CCH) para. 37,284 (October 14, 1986). This represented a reversal of the ICC's previous position regarding this issue. In *National Industrial Transportation League ("NITL")*, the Commission was asked by the NITL to adopt a rule declaring a negotiated (but unpublished) motor carrier rate to be the maximum reasonable rate "if the shipper acted with a good faith belief that the negotiated rate was the legally applicable rate". The NITL stressed that such a rule would not abrogate § 10761 and also that, "although motor carrier undercharge cases must be filed in court, 49 U.S.C. § 11706, the courts can refer the question of whether a motor carrier practice in fact violates the Act to the Commission, under the doctrine of primary jurisdiction." *Id.*

The NITL's arguments did not persuade the ICC. The Commission ultimately decided that it lacked the authority to adopt the NITL's proposed rule because the rule would "essentially nullify" § 10761. The ICC stated that it would assume its traditional role in unreasonable practice cases and aid the court by making necessary administrative determinations. *Id.* However, the ICC noted that its review would remain consistent with the statutory scheme and that the court has authority to set the remedy and accept or reject the Commission's conclusion.

Thus, as recognized by the ICC itself, the ICC's mere change in policy enunciated in *NITL* is not binding upon this Court.[1]

---

1. In *Petition to Institute Rulemaking or Negotiated Motor Common Carrier Rates; Ex Parte No. MC–177*, 5 I.C.C.2d 623, 1989 Fed.Carr.Cas. (CCH) para. 37,694 (June 14, 1989), the ICC attempted to strengthen the effect of its previous statements in *NITL*, stating:

> [W]e have decided ... to reopen *NITL* to clarify: that we have primary jurisdiction over unreasonable practice issues; that our unreasonable practice determinations are thus binding and dispositive of the issue of the maximum reasonable compensation the carrier may receive for the transportation involved; and that our determinations are subject to judicial review only to determine that they are not arbitrary or capricious. Further-

more, we will modify our policy in this area to the extent that we will now entertain unreasonable practice claims based on negotiated rates without awaiting a court referral. However, this court has no knowledge of any statute granting exclusive jurisdiction to the ICC for resolution of such issues. Furthermore, 28 U.S.C. § 1336(b) specifically provides that a court which refers a question or issues to the ICC shall have "exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral." Therefore, this statement by the ICC is of no more force and effect than *NITL*. *See also, Supreme Beef Processors, Inc. v. Ya-*

However good the intentions of the ICC may be, the Commission's pronounced policy cannot be interpreted as legislating new law or exceptions to existing law. In *Pacific Gas & Electric Co. v. Federal Power Com'n*, 506 F.2d 33 (D.C.Cir.1974). The District of Columbia Circuit Court addressed the critical distinction between a substantive rule and a general statement of policy. A properly adopted substantive rule establishes a standard of conduct which has the force of law. A general statement of policy, however, has not such force. The court explained that:

> A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in the future rulemakings or adjudications. A general statement of policy, like a press release, pre-sages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications. [Footnote omitted.]

*Pacific Gas & Electric Co.*, 506 F.2d at 38. *See also, Supreme Beef Processors, Inc. v. Yaquinto (Matter of Caravan Refrigerated Cargo, Inc.)*, 864 F.2d 388, 391 (5th Cir.1989).

The ICC refused to adopt the NITL's proposed rule, but rather instead it declared a general policy on the issue of unreasonable practices. Nonetheless, the law presently requires that this Court apply the filed rate doctrine as enunciated by 49 U.S.C. § 10761 and the *Maxwell* decision by the Supreme Court. The decision by the ICC in *NITL* did not and cannot usurp the legislative duties of Congress. *See, Supreme Beef, supra* at 392.

It has been argued that the Motor Carrier Act passed by Congress in 1980, which substantially deregulated the trucking industry, warrants reconsideration of the filed rate doctrine. However, Congress did not amend § 10761 and, in an analogous situation, the Supreme Court has refused to give an expansive reading to the Motor Carrier Act. *See, Square D Company v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986). In *Square D*, the plaintiffs asserted that the *Keough* doctrine had been impliedly repealed by the Motor Carrier Act and argued that allowing antitrust actions would promote the purposes of the Act. The Supreme Court, however, refused to read into the Act an implied repeal of the *Keough* doctrine, stating that:

> ... Congress must be presumed to have been fully cognizant of this interpretation of the statutory scheme, which has been a significant part of our settled law for over half a century and that Congress did not see fit to change it when Congress carefully reexamined this area of the law in 1980.

*Square D*, 106 S.Ct. at 1928 (Footnote omitted). The Fifth Circuit Court of Appeals has so held in a case involving collection of undercharges, such as the instant case. *Supreme Beef Processors, Inc. v. Yaquinto (Matter of Caravan Refrigerated Cargo, Inc.)*, 864 F.2d 388 (5th Cir.1989).

Numerous cases have been cited by each party in support of their respective positions. Two very recent decisions *West Coast Truck Lines, Inc. v. Weyerhaeuser Co.*, 893 F.2d 1016 (9th Cir.1990) and *Delta Traffic Service, Inc. v. Oneida Motor Freight, Inc.*, 893 F.2d 472 (2d Cir.1990) contend that issues concerning the reasonableness of practices fall within the primary jurisdiction of the ICC. These cases, however, ignore the plain language of *Maxwell* in which the Supreme Court clearly limited the scope of review to a review of rates, to the exclusion of a review of practices.[2]

---

quinto *(Matter of Caravan Refrigerated Cargo, Inc.)*, 864 F.2d 388, 392 (5th Cir.1989); *Delta Traffic Service, Inc. v. Sun Chemical Dispersions Div.*, 1988 Fed.Carr.Cas. (CCH) para. 83,415 (S.D.Ohio Sept. 14, 1988).

**2.** Midwest suggests that the ICC has jurisdiction to sidestep the "filed rate doctrine", although

this Court does not. *See, Delta Traffic Service, Inc. v. Oneida Motor Freight, Inc.*, 893 F.2d 472 (2nd Cir.1990) ("As previously discussed, *Maxwell* indicated that a filed rate should not be enforced if the ICC found it to be unreasonable. Once the ICC finds a rate *or practice* to be reasonable, however, courts must comply with the filed rate doctrine and may not consider

It is difficult to reconcile the decisions of the various courts. However, it appears to this Court that there lies a distinction between reasonableness of the published tariff, and reasonableness in practices of the carrier vis-a-vis collection of the published tariff. While both may be reviewed by the ICC, reasonableness of a carrier's practices or reasonableness of collection of the published tariff (i.e. undercharges), are not factors which can be considered by this Court within the context of the Plaintiff's claim. *See, Supreme Beef, supra.* As set forth in *Maxwell, supra,* and other cases cited above, equitable considerations are not legally cognizable. *See also, Farley Transportation Company, Inc. v. Santa Fe Trail Transportation Company,* 778 F.2d 1365 (9th Cir.1985); *Western Transportation Company v. Wilson & Company, Inc.,* 682 F.2d 1227 (7th Cir.1982); *Delta Traffic Service, Inc. v. Sun Chemical Dispersions Division,* 1988 Fed.Carr.Cas. (CCH) para 83,415 (S.D.Ohio Sept. 14, 1988); *Delta Traffic Service, Inc. v. E.L. Mustee & Sons,* 1988 Fed.Carr.Cas. (CCH) para. 83,407 (N.D.Ohio May 12, 1988). The Supreme Court specifically stated in *Maxwell, supra,* that shippers as well as carriers must abide by the published rate "unless it is found by the Commission to be unreasonable." *Maxwell,* 237 U.S. at 97, 35 S.Ct. at 495. *See also, Western Transportation Company,* 682 F.2d 1227, 1231.

In this case, Midwest raises only equitable defenses which are of no great moment.[3] This Court must follow established precedent, which does not recognize such defenses. The Court finds, therefore, that there are no genuine issues of material fact and the Plaintiff is entitled to judgment as a matter of law on the issue of liability. However, there is no evidence in the record to establish the amount for which Midwest is liable. Therefore, a hearing will be scheduled to establish the amount of the judgment.

Midwest has made two other requests in its Motion: for vacation of the stay of this adversary proceeding, and for an award of reasonable attorney fees and costs. The Trustee has joined in the request that the stay be lifted, and it is appropriate to do so. Midwest finally requests an award of attorney's fees and costs which were occasioned by the Trustee's alleged conduct before the ICC. In light of the Court's decision on the Motions for Summary Judgment, it is inappropriate for this Court to award attorney fees and costs. The Court would note that it does not condone tactics of the kind described by Midwest in its Motion for Summary Judgment; however, any such award should be sought from the ICC, before which the behavior occurred. It would be inappropriate for this Court to impose sanctions for activities which did not occur before this Court. In accordance with the foregoing, it is

Ordered and Adjudged that Plaintiff's Motion for Summary Judgment hereby is GRANTED in part. The Defendant's Motion for Summary Judgment is DENIED. An evidentiary hearing will be held on May 15, 1990 at 9:30 a.m. in C.R. 148, United States Bankruptcy Court, 85 Marconi Boulevard, Columbus, Ohio 43215, to determine the balance due from Midwest. It is further

Ordered and Adjudged that Midwest's Motion for Vacation of Stay of Judicial Proceedings is granted, and the Stay previously imposed in this adversary proceeding as to proceedings between the Plaintiff and Midwest is vacated. It is further

equitable defenses to an action to collect undercharges [emphasis added].") The Second Circuit stated the narrow holding of *Maxwell* and then changed the meaning of the holding by including the words "or practices". Clearly, if the Supreme Court in *Maxwell* had wanted to include practices, it would have. *See also, West Coast Truck Lines, Inc. v. Weyerhaeuser Co.,* 893 F.2d 1016 (9th Cir.1990).

**3.** Midwest has attempted to distinguish this case from previous decisions by this Court, suggesting that the ICC's findings of unreasonable practice is not an equitable defense and is tied to the rate issue. This is, of course, without merit, and the Court need not address this theory at length. Suffice it to say that the ICC's decision was clearly predicated on a waiver or estoppel theory, which is, of course, an equitable defense of the kind that *Maxwell* disavowed. In fact, *Maxwell* is based on a factual scenario directly on all fours with the instant case.

Ordered and Adjudged that Midwest's Motion for Award of Reasonable Attorney's Fees and Costs is denied without prejudice to Midwest to seek such an award from the Interstate Commerce Commission.

IT IS SO ORDERED.

