**James B. ORR and Highway Express, Inc., Plaintiffs,**

**v.**

**SEWELL PLASTICS, INC., Defendant.**

**No. 86–2874 GA.**

United States District Court, W.D. Tennessee, W.D.

March 18, 1987.

See also, 703 F.Supp. 676.

James N. Clay, Memphis, Tenn., for plaintiff.

Michael P. Coury, Memphis, Tenn., Dennis Starks, Office of Gen. Counsel, ICC, Washington, D.C., W. Hickman Ewing, U.S. Atty., Memphis, Tenn., for defendants.

## ORDER OF PARTIAL REFERENCE TO THE ICC

GIBBONS, District Judge.

Plaintiffs James B. Orr, a citizen of Arkansas, and Highway Express, a Mississippi corporation, brought this action in Tennessee state court against Sewell Plastics, Inc. (Sewell), a Georgia corporation, seeking $142,567.85 alleged to be due and owing under a tariff filed with the Interstate Commerce Commission (ICC). Defendant Sewell, asserting diversity jurisdiction, removed the case to this court. Sewell now moves to transfer this dispute to the ICC so that it may exercise its primary jurisdiction over the issues raised.

Sewell is engaged in the manufacture and distribution of various plastic products throughout the United States. In 1983 Highway Express solicited Sewell and negotiated a rate for shipping plastic containers from Sewell's plant in Jackson, Mississippi to various points in Louisiana and Mississippi. Between September 1, 1983, and May 17, 1985, Sewell made 119 shipments via Highway Express and paid Highway Express pursuant to the rate negotiated by the parties. James B. Orr has entered into an agreement with Highway Express whereby he has received an assignment to all right, title and interest of Highway Express to all audit and collection privileges on all freight bills owned by Highway Express for a period of three years prior to the assignment, which includes the period here at issue. On October 24, 1986, plaintiffs filed suit in state court. The case was removed to this court on November 10, 1986. On December 30, 1986, defendant moved to refer the action to the ICC. Plaintiffs moved to amend their complaint on February 9, 1987, to include Mississippi intrastate commerce claims; the motion to amend was granted on February 23, 1987. For the following reasons, defendant's motion is granted with respect to plaintiffs' interstate commerce claims and denied as to the intrastate amendments.

The United States Supreme Court has long held that "the Interstate Commerce Act requires carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment." *Louisville & Nashville R.R. Co. v. Rice,* 247 U.S. 201, 202, 38 S.Ct. 429, 429, 62 L.Ed. 1071 (1918). The ICC requires common carriers to file their tariffs. 49 U.S.C. § 10762(a)(1). In the past, carriers were not allowed to charge more or less than the specified rate, 49 U.S.C. § 11903; *Louisville & Nashville R.R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915), and the ICC refused to recognize equitable defenses to efforts to collect undercharges. *See Seaboard System R.R.,*

*Inc. v. United States,* 794 F.2d 635, 638 (11th Cir.1986) (citing *Nader v. Allegheny Airlines,* 426 U.S. 290, 304–05, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976)). In 1980 Congress amended the Interstate Commerce Act with passage of the Motor Carrier Act of 1980. 49 U.S.C. § 10101 *et seq.* This amendment permits motor carriers to negotiate rates with individual shippers and file the rates with the ICC. Defendant now moves for this action to be referred to the ICC to determine if, under the circumstances of the case, the collection of undercharges would be an unreasonable practice under the Act.

The doctrine of primary jurisdiction is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific R.R.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). In cases raising an issue of fact not ordinarily in the experience of a judge, uniformity and consistency in regulation of a business entrusted to an administrative agency are secured by the court's referral of the case to that agency. *INF, Ltd. v. Spectro Alloys Corp.,* 651 F.Supp. 1405 (D.Minn.1987) (Lexis, Genfed library, Courts file). In the area of transportation, the ICC has primary jurisdiction over "issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulating scheme laid down by the Act." *Western Pacific,* 352 U.S. at 65, 77 S.Ct. at 166; *Iowa Beef Processors v. Illinois Central Gulf R.R. Co.,* 685 F.2d 255, 259 (8th Cir.1982).

Section 10701(a) of the Act requires rates set by carriers to be reasonable. Contrary to past practices, the changed circumstances of deregulation led the ICC to hold that it would be an unreasonable practice to allow a carrier to recover undercharges where "there was no evidence that the carrier intentionally or knowingly undercharged, when waiving the undercharges was unlikely to encourage carriers to indulge in intentional discriminatory rate 'misquotations,' and when the shipper relied on the carrier's continuing conduct in misleading the shipper as to the applicable rate under a confusing tariff." *Seaboard,* 794 F.2d at 638 (quoted in *INF*).

The ICC recently adopted a policy statement which stated that the "filed rate doctrine does not necessarily bar equitable defenses." Interstate Commerce Commission, Ex Parte No. MC–177 at 1 (Oct. 14, 1986). The ICC rejected a proposed rule which would bind carriers to negotiated but unpublished rules, yet admitted that in certain circumstances it would be fundamentally unfair to bar a shipper's equitable defense to a claim of undercharges. *Id.* at 5; *INF.* While neither *Seaboard* nor Ex Parte No. MC–177 is directly on point, they both manifest the ICC's intention to "broaden the use of its authority to determine what is 'reasonable.'" *INF.* The ICC has more expertise in determining whether plaintiffs' practices are reasonable and thus this court must defer to the Commission. Accordingly, defendant's motion to refer the proceedings to the ICC is granted as to those claims arising from interstate commerce.

IT IS SO ORDERED.