912 F.2d 119
 James B. ORR and Highway Express, Inc.,
Petitioners-Appellants (89-5108),
Plaintiffs-Appellants (89-5110),
v.
INTERSTATE COMMERCE COMMISSION, United States of America,
Respondents-Appellees (89-5108),
and
Sewell Plastics, Inc., Intervenor Respondent-Appellee
(89-5108), Defendant-Appellee (89-5110).
 Nos. 89-5108, 89-5110.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 13, 1989.
Decided Aug. 22, 1990.
 
 James N. Clay, III (argued), Memphis, Tenn., for petitioners-appellants.
 W. Hickman Ewing, Jr., U.S. Atty., Memphis, Tenn., Judith Albert (argued), I.C.C., Office of the Gen. Counsel, Washington, D.C., for respondents-appellees.
 Michael P. Coury, Laughlin, Halle, Gibson & McBride, Memphis, Tenn., for intervenor-appellee.
 Before KRUPANSKY and RYAN, Circuit Judges, and CHURCHILL, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs Highway Express, Inc. and James Orr appeal two orders of the district court: 1) a 1988 order affirming the Interstate Commerce Commission ("ICC") determination and granting partial summary judgment on the interstate claims, and 2) a 1989 order granting summary judgment on the intrastate claims.
 
 The issues we address are:
 
 2
 1. Whether the district court erred in affirming and adopting the ICC's decision that Highway Express' attempt to retroactively collect higher rates than those negotiated and paid by Sewell constituted an unreasonable practice under 49 U.S.C. Sec. 10701(a).
 
 
 3
 2. Whether the district court erred in determining that collecting the intrastate undercharges in question here constituted an unreasonable practice under Mississippi law.
 
 
 4
 The Supreme Court recently rejected the ICC's Negotiated Rates doctrine that found actions such as plaintiffs' to be an unreasonable practice. Thus, we reverse the district court's adoption of the ICC determination on the interstate claims and the court's summary judgment for defendant on the intrastate claims. We remand for further proceedings on both issues.
 
 I.
 
 5
 Plaintiff Highway Express, Inc. ("Highway Express"), a motor common carrier, contracted with defendant Sewell Plastics, Inc. ("Sewell") to transport both interstate and intrastate products manufactured by Sewell. Highway Express negotiated rates with Sewell that were lower than the rates, or "tariffs" as they are known, that were filed with the ICC. The negotiated rates were the amounts used in billing Sewell, and the amounts ultimately paid for the transportation services.
 
 
 6
 Highway Express ceased operations in 1986. That spring, plaintiff James B. Orr audited Highway Express' freight bills and later acquired ownership of the bills and the right to collect all balances due. In October 1986, Orr and Highway Express sued defendant Sewell for "undercharges," or the difference between the filed tariffs and the lower negotiated rates, on shipments made between September 1983 and May 1985, basing their claims on the Interstate Commerce Act, 49 U.S.C. Sec. 10744 et seq., and Miss.Code Ann. Sec. 77-7-213.
 
 
 7
 After removing the case to federal district court, Sewell requested the court in December 1986, pursuant to the doctrine of primary jurisdiction, to issue an order of reference to the Interstate Commerce Commission. The district court granted Sewell's request for reference to the ICC in March 1987, although Sewell had already filed a complaint with the ICC in January 1987. In a decision filed February 2, 1988, the ICC found that collection of the undercharges would constitute an unreasonable practice.
 
 
 8
 In this case, we have determined: that defendant Highway agreed to a negotiated commodity rate; and that it was developed under circumstances in which the shipper could reasonably expect it to be valid. Moreover, it is clear that Sewell tendered the subject traffic to Highway in direct reliance on the rate it had understood to have been negotiated. We find that it would be an unreasonable practice now to require Sewell to pay undercharges for the difference between the amount Highway invoiced and Sewell paid, and the amount contained in Highway's tariff when the transportation was performed.
 
 
 9
 The district court, on November 17, 1988, affirmed the decision of the ICC and granted summary judgment for Sewell on the interstate claims. Orr v. Interstate Commerce Comm'n, 703 F.Supp. 676 (W.D.Tenn.1988). In January 1989, the district court granted summary judgment for Sewell on the intrastate claims. Orr v. Sewell Plastics, Inc., 707 F.Supp. 967 (W.D.Tenn., 1989). This appeal of both orders followed.
 
 II.
 
 10
 The ICC, pursuant to the Interstate Commerce Act, regulates interstate shipping by motor common carriers. The Act prohibits discrimination and, among other things, requires motor common carriers to file tariffs with the ICC. The carriers must charge customers the filed tariffs, a practice often referred to as "the filed rate doctrine." The Act also provides that rates and practices of the carriers must be "reasonable."
 
 
 11
 The issues in this case address two statutory provisions in the Act, sections 10761 and 10701, and the relationship between them. Section 10761 establishes the basis for the "filed rate doctrine." It reads in relevant part:
 
 
 12
 [A] carrier providing transportation ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.
 
 
 13
 49 U.S.C. Sec. 10761(a) (emphasis added).
 
 
 14
 Section 10701 requires that rates and practices be "reasonable." "A rate, ... classification, rule, or practice related to transportation or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title must be reasonable." 49 U.S.C. Sec. 10701.
 
 
 15
 This case requires analysis of the interplay between these two requirements in a situation in which an attempt to collect the difference between the filed rates and the negotiated lower unfiled rates has been labeled an "unreasonable practice" by the ICC.
 
 III.
 
 16
 Plaintiffs Orr and Highway Express argue that the district court erred in granting summary judgment for defendants based on the ICC's determination that collection of the undercharges constituted an unreasonable practice. They claim error because of the Supreme Court precedent supporting strict adherence to section 10761(a)'s requirement that rates charged must be filed rates regardless of any equitable considerations.
 
 
 17
 Defendants argue that the district court properly granted summary judgment based on the ICC's determination that plaintiffs' actions in enforcing the higher filed rate would constitute an "unreasonable practice" in violation of 49 U.S.C. Sec. 10701. They assert that the "filed rate" provisions and the "unreasonable practice" provisions are co-equal statutory requirements and that finding an unreasonable practice in this case does not conflict with legal precedent.
 
 
 18
 The Supreme Court has strictly enforced the filed rate requirements of 49 U.S.C. Sec. 10761(a).
 
 
 19
 Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.
 
 
 20
 Louisville & Nashville R.R. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915) (emphasis added). In an opinion filed after oral argument in this case, the Supreme Court reiterated its adherence to a strict interpretation of section 10761(a). The Court reviewed an Eighth Circuit case[1] involving a factual situation almost identical to this case and rejected the ICC's determination that collection of undercharges based on filed rates, after lower unfiled rates had been negotiated, constituted an "unreasonable practice."
 
 
 21
 Under the Negotiated Rates policy, the ICC has determined that a carrier engages in an unreasonable practice when it attempts to collect the filed rate after the parties have negotiated a lower rate.... For a century, this Court has held that the Act, as it incorporates the filed rate doctrine, forbids as discriminatory the secret negotiation and collection of rates lower than the filed rate. By refusing to order collection of the filed rate solely because the parties had agreed to a lower rate, the ICC has permitted the very price discrimination the Act by its terms seeks to prevent.... Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of stare decisis, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning. Labelling the carrier's conduct an "unreasonable practice" cannot disguise the fact that the ICC is justifying deviation from the filed rate purely on the ground that the carrier and shipper have privately negotiated a lower rate. Stripped of its semantic cover, the Negotiated Rates policy and, more specifically, the Commission's interpretation of "unreasonable practices" thus stand revealed as flatly inconsistent with the statutory scheme as a whole and Secs. 10761 and 10762 in particular.
 
 
 22
 Maislin Industries v. Primary Steel, Inc., --- U.S. ----, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990) (citations omitted), reversing and remanding, 879 F.2d 400 (8th Cir.1989).
 
 
 23
 The Court noted that the filed rate doctrine "contains an important caveat: the filed rate is not enforceable if the ICC finds the rate to be unreasonable." 110 S.Ct. at 2767. In Maislin, as in this case, the ICC found that the carrier had engaged in an unreasonable practice; the ICC in neither case made a finding that the tariff rates were unreasonable.
 
 
 24
 The Supreme Court's holding in Maislin directs our decision in the instant case.[2] Given the Court's rejection of the ICC's Negotiated Rates doctrine, we reverse the district court's adoption of the ICC determination in this case. We remand the case for further proceedings, noting, as the Supreme Court did, that "[t]he issue of the reasonableness of the tariff rates is open for exploration on remand." 110 S.Ct. at 2767 n. 10.
 
 IV.
 
 25
 Appellants assert that "[t]here is no valid basis for the Court to assume that the State of Mississippi's motor carrier regulation now mirrors that of federal regulation." They argue that the district court erred in granting summary judgment for defendant on the intrastate claims.
 
 
 26
 A federal court hearing a state law claim must apply the substantive law that that state would apply. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Mississippi statutes contain provisions very similar to the federal statutes. The fixed rate doctrine reads in relevant part:
 
 
 27
 No common carrier or restricted common carrier by motor vehicle shall charge, demand, collect or receive a greater, less or different compensation for transportation or for any service in connection therewith between the points enumerated in its tariff than the rates, fares, and charges specified in the tariffs in effect at the time. No such carrier shall refund or remit in any manner or by any device, directly or indirectly, or through any agent, or otherwise, any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities for transportation except such as are specified in its tariffs.
 
 
 28
 Miss.Code Ann. Sec. 77-7-213. Provisions also require reasonable rates and practices:
 
 
 29
 It shall be the duty of every common carrier or restricted common carrier of property by motor vehicle to provide safe and adequate service, equipment, and facilities for the transportation of property, and to establish, observe, and enforce just and reasonable rates, charges and classifications, and just and reasonable regulations and practices relating thereto and to the manner and method of presenting, marking, transporting and to all other matters relating to or connected with the transportation of property.
 
 
 30
 Miss.Code Ann. Sec. 77-7-151. The district court correctly summarized the role of the state service commission.
 
 
 31
 [T]he Mississippi legislature has empowered the Public Service Commission (PSC) to decide cases where rates are unreasonable or unjustly discriminatory and for the PSC to set a "reasonable" rate. Miss.Code Ann. Sec. 77-7-217 (1972). In considering a complaint of unreasonable activity on the part of a motor carrier, the PSC is to consider the "need, in the public interest, of adequate and efficient transportation service by such carriers at the lowest cost consistent with the furnishing of such services...." Miss.Code Ann. Sec. 77-7-221 (1972). The PSC is to promulgate rules and regulations concerning motor carriers, but these "shall conform as nearly as practicable to the rules, regulations, requirements and classifications promulgated by the Interstate Commerce Commission...." Miss.Code Ann. Sec. 77-7-13 (1972).
 
 
 32
 Order Granting Summary Judgment, Jan. 12, 1989, at 3 (emphasis added).
 
 
 33
 The state of Mississippi's law on this issue is unsettled, and the district court properly evaluated all data to determine how Mississippi's highest court would resolve the matter. Mississippi law expressly provides that the state rules and regulations "shall conform as nearly as practicable" to those of the ICC. The district court did not err in finding that the Mississippi court would adhere to the ICC's view. Because of the Supreme Court's decision in Maislin, however, we cannot say that summary judgment for defendant was appropriate. Thus, we remand the case for further proceedings on this issue.
 
 V.
 
 34
 For the reasons stated above, we REVERSE AND REMAND the case for further proceedings.
 
 
 
 *
 The Honorable James P. Churchill, United States Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Maislin Industries v. Primary Steel, Inc., 879 F.2d 400 (8th Cir.1989)
 
 
 [2]
 Prior to the Supreme Court's decision, circuit courts had split on this issue, with most circuits taking the position held by the Eighth Circuit in Maislin, a position which would have affirmed the district court in this case. See, e.g., Delta Traffic Service, Inc. v. Transtop, Inc., 902 F.2d 101 (1st Cir.1990); Orscheln Bros. Truck Lines, Inc. v. Zenith Electric Corp., 899 F.2d 642 (7th Cir.1990); West Coast Truck Lines, Inc. v. Weyerhauser Co., 893 F.2d 1016 (9th Cir.1990); INF, Ltd. v. Spectro Alloys Corp., 881 F.2d 546 (8th Cir.1989); Seaboard System R.R. v. United States, 794 F.2d 635 (11th Cir.1986). The Fifth Circuit had taken an opposite position in In re Caravan Refrigerated Cargo, Inc., 864 F.2d 388 (5th Cir.1989)