933 F.2d 1009
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
REBEL MOTOR FREIGHT, INC., Petitioner,
v.
INTERSTATE COMMERCE COMMISSION, United States of America, Respondents,
Sunshine Mills, Inc., Intervenor.
 No. 89-3886.
 United States Court of Appeals, Sixth Circuit.
 May 28, 1991.
 
 Before NATHANIEL R. JONES and SUHRHEINRICH, Circuit Judges, and JOINER,* Senior District Judge.
 PER CURIAM.
 
 
 1
 Carriers operating in interstate commerce are required to file their rates with the Interstate Commerce Commission (ICC). 49 U.S.C. Sec. 10762(a)(1988). Furthermore, under the filed rate doctrine, carriers are only permitted to charge the rate on file with the ICC:
 
 
 2
 [A] carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff[.]
 
 
 3
 49 U.S.C. Sec. 10761(a) (1988) (emphasis added). The clear duty of carriers to charge only rates on file is qualified in the Interstate Commerce Act by the requirement that rates "must be reasonable." 49 U.S.C. Sec. 10701(a) (1988).
 
 
 4
 The case at bar is addressed to the conflict between the rigidity of the filed rate doctrine and the requirement that rates be "reasonable." Petitioner Rebel Motor Freight ("Rebel") was an authorized interstate carrier and filed its rates with the ICC. Intervenor Sunshine Mills manufactures dog food. In early 1983, Rebel agreed to transport Sunshine's products from Mississippi to Texas at a rate slightly below the filed rate. Sunshine was not aware that the billing rate was lower than the rate on file with the ICC. Rebel apparently charged below the rate on file in order to maintain a competitive edge over business rivals. Between October 6 and December 30, 1983, Rebel handled nine truckload shipments, and Sunshine paid the billed amounts.
 
 
 5
 Sunshine paid $6,007.60 less for the nine shipments than the Rebel rate on file with the ICC. Several years later, Rebel attempted to collect the $6,007.60 in "undercharges" in the face of liquidation. At this time Sunshine learned that the rate paid in 1983 was not published in a tariff.
 
 
 6
 Rebel filed suit in the General Sessions Court of Shelby County, Tennessee seeking to recover the $6,007.60 in transportation charges relating to the nine shipments in 1983. Following judgment for Rebel, Sunshine appealed to the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. On August 4, 1988, the Circuit Court stayed the proceedings and granted Sunshine's motion to refer the matter to the ICC to determine "whether the undercharges sought to be collected by plaintiff under all circumstances would be an unreasonable practice." J.App. at 17 (Order). On December 20, 1988, Sunshine submitted a brief to the ICC arguing that Rebel's action in attempting to collect the undercharges was an unreasonable practice under 49 U.S.C. Sec. 10701(a), which states that "[a] rate ... must be reasonable."
 
 
 7
 Before the ICC, Rebel moved for dismissal on grounds that (1) the filed rate doctrine did not invite interpretations as to "reasonableness", and (2) under section 10761, Rebel had no authority to charge less than the rate specified in the tariff; therefore, the 1983 written rate agreement with Sunshine was void because it circumvented section 10761.
 
 
 8
 The ICC rejected Rebel's argument because of an ICC policy--known as "the Negotiated Rates[1] policy"--which provided that the filed rate doctrine does not necessarily bar defenses against a carrier's undercharge claim. J.App. at 54 (ICC Decision). The purpose of the Negotiated Rates policy was to "temper the harsh effects of the filed rate doctrine when it can be shown that the shipper and carrier negotiated and agreed upon a rate that was not published in a tariff." Id. at 54. Because Sunshine and Rebel entered into a written agreement providing for a rate, the ICC concluded that it would be unreasonable to require Sunshine to pay undercharges now for the shipments handled by Rebel pursuant to their negotiated agreement. Id at 55.
 
 
 9
 On September 25, 1989, Rebel filed a Petition for Review requesting this court to review the decision of the ICC. The case was held in abeyance pending our decision in Orr v. Interstate Commerce Commission, 912 F.2d 119 (6th Cir.1990). In Orr, this court followed the Supreme Court's decision in Maislin Industries, U.S. v. Primary Steel, Inc., 110 S.Ct. 2759 (1990). In both Orr and Maislin, as in the instant case, a carrier attempted to recover freight undercharges from a shipper. In order to strengthen the filed rate doctrine, the Court in Maislin held that the ICC's Negotiated Rates policy was "flatly inconsistent" with the mandatory duty of carriers, as expressed in section 109761, to charge only rates properly filed. 110 S.Ct. at 2768.
 
 
 10
 In Orr, this court applied Maislin and "rejected the ICC's determination that collection of undercharges based on filed rates, after lower unfiled rates had been negotiated, constituted an 'unreasonable practice.' " Orr, 912 F.2d at 122. Orr remanded for a determination of the reasonableness of the tariff rates. Id.
 
 
 11
 Maislin and Orr clearly require reversal of the ICC's decision below. The only dispute is whether the case should be remanded back to enable the ICC to determine if the rate on file was reasonable. In this regard, we note that Maislin emphasized the statutory requirement that filed rates be "reasonable." Maislin, 110 S.Ct. at 2767 ("The filed rate doctrine, however, contains an important caveat: the filed rate is not enforceable if the ICC finds the rate to be unreasonable."). A footnote in Maislin also suggests a remand may be appropriate if the reasonableness issue has not yet been addressed:
 
 
 12
 The ICC did not determine whether the tariff rates were unreasonable even though respondent requested such a determination. We therefore must assume, for purposes of our decision today, that the rates were reasonable. The issue of the reasonableness of the tariff rates is open for exploration on remand.
 
 
 13
 110 S.Ct. at 2767 n. 10 (emphasis added). In Orr this court remanded, after reversing a similar ICC decision, based on footnote 10 in Maislin. Orr, 912 F.2d at 122.
 
 
 14
 Rebel argues that the unreasonableness of tariff rates cannot be asserted as a defense to a shipper's obligation to pay the tariff rate, citing T.I.M.E. v. United States, 359 U.S. 464 (1959). In T.I.M.E., a carrier sued a shipper to collect freight charges. The shipper defended by asserting that the rates were unreasonable under the Motor Carrier Act. The Court held that Congress did not intend to enable shippers to assert "unreasonableness" as a defense in suits to recover tariff rates. Instead, the reasonableness requirement "creates only a 'criterion for administrative application in determining a lawful rate' rather than a 'justiciable legal right.' " 259 U.S. at 469 (citation omitted). In the wake of T.I.M.E., Congress amended the Interstate Commerce Act to enable shippers to recover reparations for unreasonable rates. Rebel concludes that Sunshine's only avenue to challenge the reasonableness of a rate after the shipment is through a reparations proceeding. See Mohasco Industries v. Acme Fast Freight, 491 F.2d 1082, 1084 (5th Cir.1974) (applying T.I.M.E. for holding that statutory reparations remedy provided "the sole and exclusive remedy for excessive charges.").
 
 
 15
 Unfortunately for Rebel, the precedential value of T.I.M.E. has been greatly eroded. Justice Stevens acknowledged as much in his dissent in Maislin:
 
 
 16
 [In] the 5-4 decision in T.I.M.E. ... this Court prohibited district courts from staying collection proceedings pending agency review of the reasonableness of a filed rate. Although T.I.M.E. is strikingly similar to today's decision in a host of respects, the majority does not rely on it. Its reluctance to place any substantial weight upon T.I.M.E. is easily understood, because that precedent was greatly limited by this Court's subsequent decision in Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., 371 U.S. 84, 88-89 [1962], and what remained of it was thereafter unambiguously repudiated by Congress.
 
 
 17
 Maislin, 110 S.Ct. at 2776-77 n. 12 (Stevens, J., dissenting). Thus, T.I.M.E. is not dispositive of this case, and Sunshine is not required to pursue reparations as its sole remedy.
 
 
 18
 Rebel also relies on an unpublished post-Maislin case from the Third Circuit, Branch Motor Express Company v. Caloric Corp., No. 89-1130, slip op. (3d Cir. Aug. 14, 1990). Branch Motor presented facts somewhat similar to the case at bar. The Third Circuit did not remand to the ICC on the reasonableness issue because the shipper "never supplied any support for its proposition that [the carrier's] rates were unreasonable." Id. at 3. Branch Motor also interpreted footnote 10 in Maislin to mean that "the Supreme Court was taking no position on whether re-referral to the ICC was appropriate." Id. at 4.
 
 
 19
 We agree that footnote 10 in Maislin does not require a remand in every case where unreasonableness of rates is alleged; however, the lack of evidence in Branch Motor was the Third Circuit's reason for not remanding to the ICC. In this case, Sunshine is prepared to put on evidence regarding the unreasonableness of the rates. Branch Motor also relies on the fact that because the shipper did not succeed in establishing the unreasonableness of the rates before the ICC, the "mere mention of rate unreasonableness [on appeal], entirely unsupported ... is not sufficient to give it a second bite at the apple." Id. at 4.
 
 
 20
 Sunshine has not yet had an opportunity to present its evidence to the ICC. In Branch Motor, by contrast, the shipper has no evidence whatsoever on this issue. Rebel's argument, which emphasizes that reparations provides the only remedy, does not provide an opportunity for the ICC to address the reasonableness of rates. As a carrier subject to the jurisdiction of the Interstate Commerce Commission, Rebel had an obligation under section 10701 to keep its rates "reasonable". A remand to the ICC effectuates this purpose.
 
 
 21
 We do not, however, interpret Maislin to require a re-referral to the ICC in every suit by a carrier to collect undercharges. The point of Maislin was to prevent undercutting of the filed rate doctrine through separate agreements between shippers and carriers. Requiring a ruling from the ICC on reasonableness in every case would weaken the "strict adherence" to the filed rate doctrine required by Maislin. 110 S.Ct. 2771. In this case, however, we conclude that a remand to the ICC for consideration of the reasonableness issue is appropriate.
 
 
 22
 The decision of the ICC is REVERSED, and the matter is REMANDED back to the ICC for a determination of the reasonableness issue.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The policy originated in a 1986 case in an attempt to temper the harshness of the filed rate doctrine. The ICC concluded that, in future referrals, the ICC would "decide if the collection of undercharges would be a reasonable practice." NITL--Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates, 3 I.C.C.2d 99, 100 (1986) (Negotiated Rates I)